George T. QUINN, Executor of the Estate of Thomas J. Thompson, Deceased, Plaintiff,

v.

Kenneth O. HOOK, District Director of Internal Revenue, Defendant.

Civ. A. No. 34382.

United States District Court
E. D. Pennsylvania.

June 30, 1964.

Robert M. Taylor, Philadelphia, Pa., for plaintiff.

Frank Gundlach, Wallace Maloney, Department of Justice, Washington, D. C., for defendant.

FREEDMAN, District Judge.

This is an action by the plaintiff against the District Director of Internal Revenue and the United States.[1] The Government has moved to dismiss. The complaint is unconventional in form and is framed not as a suit for ultimate decision but rather as an action for preliminary intervention by the court. Enough is alleged, however, to make it desirable that the substance of the claim be reached and decided.

What plaintiff seeks is an injunction against any action by the Government to collect an assessment of income taxes pending a final decision which would expunge and set aside the assessment, levy and attachment which the Government has already made on certain personal property of the plaintiff's decedent. The factual basis for this drastic relief is the claim that the Tax Court's decision [2], upon which the assessment was based, is invalid because plaintiff's decedent was mentally incompetent and unrepresented by a guardian during the Tax Court proceedings. The assessment is alleged to be greatly in excess of any taxes due.

Jurisdiction is asserted under 28 U.S.C. §§ 1340 and 2410. Section 1340 is the general provision conferring upon the district courts "original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue * * *". Section 2410 deals with actions to quiet title to real or personal property on which the United States claims a lien.

### I.

The grant by § 1340 of jurisdiction in the district courts to entertain civil actions under the internal revenue laws is not of itself a waiver of governmental immunity from suit [3]. It merely authorizes proceedings in which the Government has by some other statutory provision consented to be sued.

Although the doctrine of sovereign immunity has been modified in modern times in recognition of the increasing effect on citizens of the operations of Government, the general principle has long prevailed unchanged that the Government is not to be balked in its tax collection by taxpayers' litigation, for this would threaten its continued operation and might even endanger its very existence [4].

In these circumstances Congress has necessarily come to deal with the problem of relief to taxpayers who complain that the Government's tax claims are excessive. This relief has taken two general forms. First, Congress has authorized suits by taxpayers against the United States in the district courts or the Court of Claims for the recovery of taxes which have been erroneously or illegally assessed or collected. (28 U.S.C. § 1346(a) (1)). Secondly, Congress has provided an additional remedy which a taxpayer may invoke before being required to pay the tax. Section 6213(a) of the Internal Revenue Code authorizes a taxpayer to petition the Tax Court of the United States for a redetermination of a deficiency after notice of the deficiency is given. Under this section proceedings by the United States for the collection of the tax may not be prosecuted until the decision of the Tax Court has become final, and if earlier undertaken may be enjoined by a proceeding in the proper court. Decisions of the Tax Court are reviewable exclusively by the Courts of Appeals in the same manner as decisions of the district courts in civil actions tried without a jury, and their judgments are reviewable by the Supreme Court of the

---

1. Plaintiff's motion to add the United States as a party defendant under F.R. Civ.P. rule 21 will be granted.

2. Thompson v. Commissioner, 21 CCH Tax Ct. Mem. 1066 (1962).

3. De Masters v. Arend, 313 F.2d 79, 84 (9th Cir. 1963); United States v. Coson, 286 F.2d 453, 456 (9th Cir. 1961); First National Bank of Emlenton, Pa. v. United States, 265 F.2d 297, 299 (3d Cir. 1959).

4. See, e. g., State Railroad Tax Cases, 92 U.S. 575, 613–614, 23 L.Ed. 663 (1875); Cheatham v. United States, 92 U.S. 85, 88, 23 L.Ed. 561 (1875).

United States on certiorari. (Int.Rev. Code § 7482). The procedure for relief in the Tax Court is defined with the utmost precision and the time when its decision becomes final is spelled out in meticulous detail by the statute. (Int.Rev. Code § 7481).

These are the two remedies which Congress has provided for the taxpayer in addition to the detailed administrative remedies within the Internal Revenue Service itself. The Supreme Court long ago described the general tax framework as "a system of corrective justice intended to be complete * * *". Snyder v. Marks, 109 U.S. 189, 194, 3 S.Ct. 157, 160, 27 L.Ed. 901 (1883). More recently, the Court declared its unwillingness to "sacrifice the harmony of our carefully structured twentieth century system of tax litigation * * *". Flora v. United States, 362 U.S. 145, 176, 80 S.Ct. 630, 647, 4 L.Ed.2d 623 (1960).

█ Congress itself has clearly expressed its intention to make these remedies exclusive by specifically providing that, except pending notice of deficiency and petition to the Tax Court, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court". (Int.Rev. Code § 7421). This provision codifies the common law rule against the use of injunctions to restrain the assessment or collection of taxes [4]. Congress has also provided that once a taxpayer has sought relief in the Tax Court he may not bring suit in any court for the recovery of any part of the tax, except to enforce a final decision of the Tax Court [5]. (Int.Rev. Code § 6512(a)). In adopting the Federal Declaratory Judgments Act Congress specifically excepted from its provisions those controversies which relate to federal taxes. (28 U.S.C. § 2201).

## II.

The taxpayer argues, however, that a new remedy has been afforded by § 2410(a) of the Judicial Code. (28 U.S.C. § 2410(a)). By this provision the Government has consented to be sued "in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter, to quiet title to or for the foreclosure of a mortgage or other lien upon real or personal property on which the United States has or claims a mortgage or other lien." It was not until 1942 that the remedy of quieting title was added to the statute which theretofore had dealt only with the foreclosure of a mortgage or other lien on property on which the United States had or claimed a mortgage or other lien. The purpose of the amendment, as clearly stated in the House and Senate reports,

---

4. In the landmark case of Miller v. Standard Nut Margarine Co., 284 U.S. 498, 509, 52 S.Ct. 260, 263, 76 L.Ed. 422 (1932), the Supreme Court held that in enacting the common law rule that courts of equity will not restrain the collection of a tax upon the sole ground of its illegality, Congress did not intend to abrogate the "salutary and well established rule" that "in cases where complainant shows that in addition to the illegality of an exaction in the guise of a tax there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector." Since that decision, courts have rigidly adhered to the two requirements that there be an "exaction in the guise of a tax" and "special and extraordinary circumstances" before injunctive relief will be afforded. See, e. g., Melvin Building Corp. v. Long, 262 F.

2d 920 (7th Cir. 1958), holding that it was error to grant an injunction where the allegation was not that the tax was illegal, but that the tax assessed was not due. Recently, in Enochs v. Williams Packing & Nav. Co., 370 U.S. 1, 7, 82 S. Ct. 1125, 1129, 8 L.Ed.2d 292 (1962), the Court held that a complaint for injunctive relief must be dismissed for want of jurisdiction unless "it is clear that under no circumstances could the Government ultimately prevail". The exception to the rule against injunctions clearly is not applicable to the present complaint which deals with a case where the Tax Court has already decided in favor of the Government. Compare, e. g., Midwest Haulers, Inc. v. Brady, 128 F.2d 496 (6th Cir. 1942); Hill v. Wallace, 259 U.S. 44, 62, 42 S.Ct. 453, 66 L.Ed. 822 (1922).

5. Other exceptions are not here relevant.

"is to permit the United States to be made a party defendant in cases involving foreclosure of mortgages or liens on personal property[6] and to provide a method to clear real estate titles of questionable or valueless Government liens[7]." Its passage was recommended by Attorney General Jackson in order to protect good faith purchasers of real estate and foreclosing mortgagees[8].

The question whether the Government's consent to be sued, given by § 2410(a), extends to an attack upon the merits of the tax assessment itself has been considered in a number of cases. It was clearly met in Pipola v. Chicco, 169 F.Supp. 229 (S.D.N.Y.1959), where the court held that its purpose was not to permit a collateral attack on the tax assessment, but rather to waive the Government's immunity from suit so as to permit the courts to determine the relative position of the Government lien on property as against other lienors. In such proceedings the courts are necessarily required to determine whether a lien is validly filed or is entitled to payment as against other liens. But, as Judge Weinfeld said, "[permitting inquiry into] the validity of a lien, depending upon compliance or noncompliance with statutory requirements, or the priority of a lien validly filed is quite a far cry from permitting a third party[9] to attack the tax assessment upon which a properly filed lien is based." (p. 232). The Court of Appeals for the Second Circuit affirmed on appeal (Pipola v. Chicco, 274 F.2d 909 (1960)) but later, in United States v. O'Connor, 291 F.2d 520 (1961), overruled its decision.

The O'Connor case was not a proceeding under § 2410(a), but involved § 7403 of the Internal Revenue Code, which deals with actions by the United States to enforce tax liens, in which the merits of the claim are clearly involved. The Government admitted that it had erroneously argued in Pipola that the validity of an assessment could not be questioned by the taxpayer in a suit under § 7403. The discussion of the subject in O'Connor was in a strict sense advisory, for the actual point of the decision was the impropriety of the appointment of the same person as receiver and special master. (See p. 526). I believe O'Connor is correct in its conclusion that the merits of the assessment are still open to attack by the taxpayer when confronted with a suit under § 7403 by the Government to enforce collection, a conclusion which would not apply if there had already been a judicial or Tax Court determination of the question[10]. This, however, is a far different matter from what was actually involved in Pipola, a proceeding under § 2410(a) to remove the cloud of a tax lien on title to property. I believe the District Court's opinion in Pipola has survived as the correct interpretation of § 2410, since O'Connor overruled only an erroneous premise for the Court of Appeals' conclusion in Pipola[11]. I am strengthened in this by an additional consideration. Section 7403 is part of the Internal Revenue Code, whereas § 2410(a) is part of the Judicial Code and deals with all forms of liens, and not tax liens alone. Hence to construe § 2410(a) as permitting attack upon the validity of an assessment[12] on which a

---

6. The Act had previously been limited to real property.

7. H.R.Rep. No. 1191, 77th Congress, 1st Sess. (1941); S.Rep. No. 1646, 77th Congress, 2nd Sess. (1942).

8. Ibid.

9. The claim there was made by a third party who had succeeded to the rights of the taxpayer in the property which became the subject of the tax lien.

10. See United States v. Leary, 228 F.Supp. 467 (D.Conn.1963) and references therein.

11. O'Connor was interpreted as completely overruling Pipola in Sonitz v. United States, 221 F.Supp. 762 (D.N.J.1963) and Falik v. United States, 206 F.Supp. 181 (E.D.N.Y.1962).

12. The assessment has the effect of a judgment for taxes found due. See Bull v. United States, 295 U.S. 247, 260, 55 S.Ct. 695, 79 L.Ed. 1421 (1935).

tax lien is founded would be to presume a congressional intention widely at variance with well accepted notions of the finality of judgments and their immunity from collateral attack. Such an intention is not to be attributed to Congress. It would, moreover, be utterly unjustified in the light of the legislative history which shows that the purpose of § 2410 (a) was to afford a means of completely adjudicating priorities of liens and their validity against specific property where the United States is one of the lienholders but could not be joined without its consent.[13]

Sonitz v. United States and Falik v. United States, supra note 11, hold that § 2410(a) should be construed to permit review of the merits of the assessment because such review is permissible when the taxpayer is the defendant in proceedings by the Government under § 7403. However, it is unreal to seek complete symmetry between proceedings by the Government and those against it, for this ignores the all-pervasive distinction that taxpayers are private citizens subject generally to suit, whereas the Government may be sued only with its consent. The Government, by invoking § 7403, removes its sovereign immunity from consideration, at least to the extent of its claim, whereas a taxpayer who institutes proceedings against the Government must show that his claim falls within the scope of the Government's consent to be sued, and § 2410(a) construed in harmony with its purpose consents only to suits to determine the priority and validity of liens.

It has been said [14] that the assessment should not be deemed conclusive in proceedings under 28 U.S.C. § 2410(a) because that section does not expressly state that in such proceedings the assessment "shall be conclusively presumed to be valid", whereas by contrast § 7424 of the Internal Revenue Code, which authorizes civil actions to clear title to property of subordinate tax liens, expressly does so declare. Such distinctions in most circumstances can serve at best only as make-weights; and in the present instance the distinction is of no significance. In the first place, § 7424 is part of the Internal Revenue Code and subsection (b) in which the above quoted language appears provides that on the filing of an action thereunder "the district court shall proceed to adjudicate the matters involved therein, in the same manner as in the case of civil actions * * * [brought by the United States to enforce tax liens] under section 7403." Since § 7403 was construed to permit a defense on the merits of the assessment, this would have authorized review on the merits in cases under § 7424 unless some limitation was expressed. Hence it was specifically provided in § 7424(b) that "[f]or the purpose of such adjudication, the assessment of the tax upon which the lien of the United States is based shall be conclusively presumed to be valid." There was no need for a provision in § 2410(a) that tax assessments underlying tax liens should be conclusively presumed to be valid because § 2410 does not incorporate by reference any other statutory provision which would authorize attack upon the judgment on which the lien is founded. Moreover, § 2410 is part of the Judicial Code, not the Internal Revenue Code; it does not deal exclusively with tax liens but with any and all liens in favor of the United States, and general common law principles would preclude collateral attack upon judgments underlying such liens.

Finally, above all other considerations, the facts here present a case in which the taxpayer invoked the jurisdiction of the

13. This history is reviewed in Judge Weinfeld's opinion in Pipola v. Chicco, 169 F. Supp. 229, 233 (S.D.N.Y.1959), affirmed, 274 F.2d 909 (2nd Cir.1960), and in Remis v. United States, 172 F.Supp. 732 (D. Mass.1959), affirmed, 273 F.2d 293 (1st Cir. 1960). See also United States v. Brosnan, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960).

14. United States v. O'Connor, 291 F.2d 520, 527 (2d Cir. 1961); Clark, Federal Tax Liens & Their Enforcement, 33 Va. L.Rev. 13, 37 (1947).

Tax Court to set aside the deficiency determination. The Tax Court proceedings in this case have long since ended and the time for review by the Court of Appeals has long since expired. The Tax Court decision has thus become final under § 7481(1) of the Internal Revenue Code. To read § 2410(a) as authorizing an inquiry into the validity of the assessment and the liability for the tax would not only ignore the res judicata effect of Tax Court decisions [15] but would disregard the clear congressional provisions that review of a decision of the Tax Court may be had only in a United States Court of Appeals and that once the taxpayer has petitioned the Tax Court no suit to recover the tax may be instituted in any court. Such a construction of § 2410 would also vitiate the congressional purpose behind the prohibitions of declaratory and injunctive relief in federal tax controversies. The consent of the United States to be made a party in mortgage foreclosure and quiet title proceedings where government liens are involved does not uproot these well established principles [16].

### III.

Plaintiff's case is not aided by the claim that the Tax Court decision underlying the tax lien is invalid because the decedent was without mental capacity and unrepresented by a guardian at the time of the Tax Court hearing.

■■ Mental incapacity, or insanity, renders a judgment voidable at the most but not void.[17] Hence the judgment of a court is not subject to collateral attack because of the insanity of the defendant (Restatement of Judgments § 78, Comment a, p. 350 (1942)), nor, as in the present case, because of the plaintiff's insanity. (McCoy v. United States, 54 F. Supp. 960 (W.D.Ark.1944)). For such a ground the judgment must be attacked directly in the court in which it was entered and on such an application there must also be shown the existence of a meritorious defense.[18]

■ These principles apply to a decision of the Tax Court, which, although an executive agency having only the jurisdiction and powers specifically granted by Congress [19], exercises solely judicial functions [20]. Its decisions are subject to review by the Courts of Appeals and ultimately by the Supreme Court. Whatever may be the full extent of the differences between the Tax Court and those tribunals which are part of the judicial branch of the Government, it may not be doubted that a Tax Court hearing is an adversary proceeding. Its determina-

---

15. See Pelham Hall Co. v. Hassett, 147 F. 2d 63 (1st Cir. 1945); United States v. Leary, 228 F.Supp. 467 (D.Conn.1963); United States v. Herter, 148 F.Supp. 349 (S.D.N.Y.1957). See also Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); Tait v. Western Md. Ry., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405 (1933).

16. Accord, Batts v. United States, 228 F. Supp. 272 (E.D.N.C.1964); Stanford Construction Corp. v. United States, 59–2 U.S.Tax Cas. ¶ 9580 (S.D.Cal.1958); Commercial Credit Corp. v. Schwartz, 126 F.Supp. 728 (E.D.Ark.1954). See also United States v. Morrison, 247 F. 2d 285 (5th Cir. 1957); Gordon v. Bank of America National Trust and Savings Ass'n, 150 F.Supp. 772 (N.D.Cal.1957).

17. Scott v. United States, 190 F.2d 134, 137 (5th Cir. 1951); Fernow v. Gubser, 136 F.2d 971, 973 (10th Cir. 1943); Restatement of Judgments, § 78, Comment a, p. 350 (1942); 44 C.J.S. Insane Persons, § 151b, p. 325.

18. Scott v. United States, 190 F.2d 134, 137 (5th Cir. 1951); Fernow v. Gubser, 136 F.2d 971, 973 (10th Cir. 1943); Beckley National Bank v. Boone, 115 F. 2d 513, 518 (4th Cir. 1940), cert. den. sub. nom. Boone v. Equitable Holding Co., 313 U.S. 558, 61 S.Ct. 835, 85 L.Ed. 1519 (1941).

19. See Int.Rev.Code § 7441: "The Board of Tax Appeals shall be continued as an independent agency in the Executive Branch of the Government, and shall be known as the Tax Court of the United States. The members thereof shall be known as the chief judge and the judges of the Tax Court."

20. Cf. Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926).

tion, therefore, is not subject to collateral attack in a fresh action in a district court to remove a cloud upon title.

 Whether relief in any other form is available to the plaintiff, either in the Tax Court or in the Court of Appeals, is, of course, beyond the question presented to me. I am not unmindful of the unavailability to plaintiff of a direct attack in the Tax Court, since its limited statutory jurisdiction is exhausted once its decision has become final, and it lacks the inherent judicial power to vacate or reconsider its decision. Lasky v. Commissioner, 235 F.2d 97 (9th Cir. 1956), aff'd. per curiam, 352 U.S. 1027, 77 S.Ct. 594, 1 L.Ed.2d 598 (1957). It may even be that plaintiff is without a remedy because of the need for an early conclusion to tax liability controversies, a situation which the Supreme Court envisaged in Bull v. United States, 295 U.S. 247, 260, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). For the Court of Appeals may not have jurisdiction to review the Tax Court determination since there was no petition for review filed within three months of the Tax Court's decision. Lasky v. Commissioner, supra [21]. Certainly this Court, in an action in which the United States has not waived its sovereign immunity, may not embark on what is in effect the review of a decision of the Tax Court, a function clearly denied to a district court by § 7482 of the Internal Revenue Code.

## ORDER

And now, June 30, 1964, plaintiff's motion to add the United States of America as a party defendant is granted. Defendants' motion to dismiss the complaint is granted.

21. See also R. Simpson & Co. v. Commissioner, 321 U.S. 225, 64 S.Ct. 496, 88 L.Ed. 688 (1944); Helvering v. Northern Coal Co., 293 U.S. 191, 55 S.Ct. 3, 79 L.Ed. 281 (1934); Old Nick Williams Co. v. United States, 215 U.S. 541, 30 S.Ct. 221, 54 L.Ed. 318 (1910); Vibro Manu-facturing Co. v. Commissioner, 312 F.2d 253, 254 (2d Cir. 1963); White's Will v. Commissioner, 142 F.2d 746, 748–750 (3d Cir. 1944); but cf., La Floridienne J. Buttgenbach & Co. v. Commissioner, 63 F.2d 630 (5th Cir. 1933).