**AQUA BAR & LOUNGE, INC.,**
Appellant,

v.

**UNITED STATES of America DEPARTMENT OF TREASURY INTERNAL REVENUE SERVICE and Joseph B. Saltz.**

No. 75–2125.

United States Court of Appeals,
Third Circuit.

Argued March 25, 1976.

Decided July 7, 1976.

Abe Lapowsky, Philadelphia, Pa., for appellant.

Robert E. J. Curran, U. S. Atty., Gary Tilles, Asst. U. S. Atty., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Elmer J. Kelsey, F. Arnold Heller, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellees.

Before SEITZ, Chief Judge, and RO-SENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

This appeal raises the issue of whether a taxpayer whose property has been seized and sold by the federal government for non-payment of federal taxes may thereafter bring suit against the United States to quiet title to that same property provided that he refrains from contesting the merits of the underlying tax assessment itself.

Plaintiff, Aqua Bar & Lounge, Inc. ("plaintiff") was the owner of a restaurant liquor license issued by the Pennsylvania Liquor Control Board. On January 16, 1975, the Internal Revenue Service ("IRS"), pursuing the non-judicial remedies available to it, issued a notice of seizure of plaintiff's property rights in this license pursuant to 26 U.S.C. § 6331 for non-payment of federal employment taxes. Thereafter, the IRS issued a notice of sealed bid sale of plaintiff's property rights in the liquor license under the provisions of 26 U.S.C. § 6335. The license was ultimately purchased by the defendant Joseph Saltz.

Plaintiff then brought this action in the district court against the United States and Saltz seeking to have the seizure and subsequent sale of its license declared null and void on the grounds: (1) that the IRS had no power to seize the license under § 6331; and (2) that the IRS had failed to comply with the procedures for sale set forth in § 6335. In addition, it requested a preliminary injunction restraining Saltz from petitioning the Pennsylvania Liquor Control Board to transfer the license from the plaintiff to himself. However, the plaintiff did not challenge the validity of the under-

lying tax assessment whose nonpayment had resulted in the seizure and sale of its property.

Upon motion of the United States, the district court denied plaintiff's motion for a preliminary injunction and dismissed its complaint as against both the government and Saltz for lack of jurisdiction. The court reasoned that the complaint sought, in essence, a declaratory judgment "with respect to Federal taxes" which the court had no power to grant under the Declaratory Judgment Act, 28 U.S.C. § 2201. · In addition, the court determined that the instant action was barred by the Anti-Injunction Act, 26 U.S.C. § 7421(a), which prohibits a suit seeking to restrain "the assessment or collection of any tax." Finally, apart from the Declaratory Judgment and Anti-Injunction Acts, the court held that the suit could not be maintained because the United States had not waived its sovereign immunity with respect to it. This appeal followed.

 Characterizing its suit as one to quiet title to property on which the United States has a lien, plaintiff asserts that the district court had jurisdiction to hear this action under 28 U.S.C. § 1340 in combination with 28 U.S.C. § 2410(a)(1). Section 1340 of the Judicial Code grants the federal district courts "original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue." Clearly, a suit which contests the validity of a federal tax lien and sale falls within its terms. *See United States v. Coson*, 286 F.2d 453, 455–56 (9th Cir. 1961). This general grant of jurisdiction does not, as plaintiff recognizes, constitute a waiver of sovereign immunity by the United States. *Quinn v. Hook*, 231 F.Supp. 718 (E.D. Pa. 1964), *aff'd* 341 F.2d 920 (3d Cir. 1965). However, plaintiff argues that the required waiver is found in § 2410(a)(1) which provides that the United States may be named as a party in any civil action "to quiet title

to . . . real or personal property on which the United States has or claims a mortgage or other lien." Finally, plaintiff maintains that neither the Anti-Injunction Act nor the Declaratory Judgement Act operates to deprive a federal court of its jurisdiction under §§ 1340 and 2410 when the taxpayer involved merely challenges the validity of a tax lien for failure to comply with statutory requirements and refrains from contesting the merits of the underlying tax assessment itself.

The government agrees that § 1340 is a possible jurisdictional basis for this action. However, it maintains, and the district court found, that even assuming that this suit may be treated as an action to quiet title, § 2410(a)(1) does not lift the bar of sovereign immunity in cases where a taxpayer whose property has been seized, as opposed to a third party who claims an interest in that property, brings suit against the United States. In addition, it contends that the district court correctly determined that both the Anti-Injunction and Declaratory Judgment Acts prohibit this suit.

 We turn first to the question of whether, based on the allegations contained in the complaint, this suit may be treated as an action to quiet title to property on which the United States has a lien. We think that this question must be answered in the affirmative.[1] At the time of the proceedings below, title to the license remained in plaintiff's name on the records of the Pennsylvania Liquor Control Board. In addition, neither the IRS nor Saltz had obtained physical possession of the license document as it remained for safekeeping in the Liquor Control Board's offices in Harrisburg. Certainly, both the tax lien asserted by the government and the sale of the license to Saltz, if indeed invalid, would cast clouds on the title to the license. *See Little River Farms, Inc. v. United States,* 328 F.Supp. 476 (N.D. Ga.1971). An action to quiet title is the proper method of removing such

---

1. The government has suggested that this suit may not be viewed as an action to quiet title because the plaintiff no longer possessed any ʾ title or interest in the license at the inception of this litigation. However, since the district court did not address this contention, we believe that the issue is more appropriate for resolution by the district court upon remand.

clouds on title. *United States v. Coson, supra* at 457.

■ Our conclusion in this regard is not undermined by the fact that the license is personal rather than real property. Although suits to quiet title have traditionally involved real property, this particular action is governed by federal rather than state law. And, the relevant federal statute, § 2410, contemplates, by its very terms, actions to quiet title to personalty on which the United States has or claims a lien. *Little River Farms, Inc. v. United States, supra* at 479; *Yannicelli v. Nash,* 354 F.Supp. 143 (D.N.J.1973).

■ Having determined that this suit may be properly viewed as an action to quiet title, we turn to the crucial issue of whether a taxpayer whose property is subjected to a federal tax lien may bring suit against the United States under § 2410(a)(1). Plaintiff concedes that an action which collaterally assails the merits of the underlying tax assessment will not lie under the statute. *Quinn v. Hook, supra.* However, it maintains that this statute waives sovereign immunity without regard to the plaintiff's status when the action contests only the validity of a tax lien and sale for failure to comply with statutory requirements. In this regard, it points out that the language of § 2410 does not limit its availability to parties other than the taxpayer whose property is involved. In addition, it contends that any construction of § 2410 which prohibits a taxpayer from bringing suit thereunder would deprive him of any remedy against the government for the illegal seizure and sale of his property.

The government, on the other hand, vigorously maintains that both the legislative history of § 2410 and the weight of the case law construing it demonstrate that it was intended to waive sovereign immunity only in suits brought by third parties claiming ownership or an interest in the property belonging to the taxpayer. Moreover, it argues that any other interpretation would upset the comprehensive and inter-related system of administrative and judicial remedies for collecting taxes and resolving an individual's tax liability.

After examination, we do not believe that plaintiff's interpretation of § 2410(a)(1) is foreclosed by the statute's legislative history as the government suggests. The quiet title provision of § 2410 was added to the statute in 1942. To be sure, in explaining the amendment's purpose to Congress, the Attorney General, later Mr. Justice Jackson, did not include taxpayers among the prospective plaintiffs who he felt might utilize the provision. H.Rep.No.1191, 77th Cong., 1st Sess., p. 2; S.Rep.No.1646, 77th Cong., 2d Sess., p. 2. However, we do not read his brief remarks to exhaust all the possibilities under the statute's rather broad language. Moreover, we note that the legislative history surrounding the most recent revision of § 2410, contained in the Federal Tax Lien Act of 1966, makes no mention of any such limitation to third parties although the history of certain other provisions of that Act specifically limit their applicability to parties other than the taxpayer involved. 1966 U.S.Code Cong. & Admin.News, p. 3722 et seq. Under these circumstances, we think it best to look to the specific language Congress chose to enact rather than the draftsman's illustrations. *See, e. g., Schwegmann Bros. v. Calvert,* 341 U.S. 384, 395, 71 S.Ct. 745, 95 L.Ed. 1035 (1951) (Jackson, J., concurring). And that language does not preclude a taxpayer from availing himself of § 2410.

Nor do we find that the weight of the case law in this area supports the government's position. Nearly every case cited by the government involved a taxpayer's attempt to utilize § 2410 to challenge the merits of the tax assessment underlying the lien.[2] *E.g., Falik v. United States,* 343 F.2d 38 (2d Cir. 1965); *Quinn v. Hook, supra.* To be sure, these cases have uniformly held that a taxpayer may not mount a collateral attack on the merits of the tax assessment

---

2. The sole exception, *Fidler v. United States,* 29 A.F.T.R.2d 1364 (N.D.N.Y.1972), is based on what we believe to be an erroneous interpreta- tion of *Falik v. United States,* 343 F.2d 38 (2d Cir. 1965).

under § 2410. However, we believe that those decisions are distinguishable from the instant case both on their facts and in terms of the policies on which they were premised.

The leading case relied on by the government, *Falik v. United States,* is illustrative. There a taxpayer brought suit against the United States to remove a tax lien on her home. The taxpayer contended that the lien was invalid because the unpaid taxes on which it was based had been wrongfully assessed against her. In finding that no such challenge could be maintained under § 2410, Judge Friendly reasoned that Congress could not have intended to extend to taxpayers a new remedy by which they could contest their tax liability through this addition to the Judicial Code. Rather, he held that the taxpayer's exclusive remedies were to either contest the deficiency in the Tax Court or pay the assessment and thereafter bring suit in the district court for a refund. *See also Quinn v. Hook, supra.* However, he at no time determined that a taxpayer could not utilize § 2410 under any circumstances. Indeed, a close reading of his opinion suggests that a taxpayer could maintain an action under § 2410 if he limits his challenge to the procedural regularity of the lien. 343 F.2d at 42.

The rationale of *Falik* and similar cases thus has no application where, as here, the taxpayer questions only the legality of the procedures used to enforce a tax lien and not the validity of the tax assessment itself. When his challenge is so limited, the taxpayer makes no attempt to circumvent

> "the long standing principle that, except as provided in [26 U.S.C.] § 6213 with respect to review of determinations of deficiencies in income, gift and estate tax by the Tax Court, a person whose sole claim is that a federal tax assessment was not well grounded in fact and law must 'pay first and litigate later.'" *Falik,* 343 F.2d at 42.

Indeed, the remedies found exclusive in *Falik* offer no recourse at all to the aggrieved taxpayer who, as plaintiff here, admits that the assessed taxes are due. Moreover, since the validity of the tax assessment is not put in issue, we fail to see how a decision permitting a taxpayer to bring suit under these circumstances will undermine the established administrative and judicial framework for resolving an individual's tax liability. Three of the four courts which have recently confronted the same issue now before us have recognized these distinctions and permitted the taxpayer to bring suit under § 2410. *Popp v. Eberlien,* 409 F.2d 309 (7th Cir. 1969), *cert. denied,* 396 U.S. 909, 90 S.Ct. 222, 24 L.Ed.2d 185 (1969); *Little River Farms, Inc. v. United States, supra; Yancelli v. Nash, supra.*

■ Not only are we unpersuaded by the government's arguments for prohibiting a taxpayer from bringing a properly limited suit against the United States under § 2410, we also find strong policy reasons for permitting such an action. The inviolability of private ownership has long been a fundamental principle of our nation's jurisprudence. *See Thatcher v. Powell,* 6 Wheat. 119, 125, 5 L.Ed. 221 (1821). In recognition of this principle, Congress has imposed precise strictures on the seizure and sale of an individual's property by the IRS to satisfy legitimate tax deficiencies. These provisions, which the plaintiff contends were not complied with in the instant case, are for the obvious protection of the taxpayer faced with the loss of his property. *Reece v. Scoggins,* 506 F.2d 967, 971 (5th Cir. 1975). Yet, if § 2410 is construed to lift the barrier of sovereign immunity only to actions brought by parties other than the taxpayer whose property is at stake, the taxpayer would have no available means of enforcing compliance with the procedures enacted for his benefit. In the absence of a Congressional directive to the contrary, we refuse to place such a narrowing construction on § 2410 and thus deprive a taxpayer of any remedy against arbitrary administrative action.

■ We therefore hold that § 2410 constitutes a waiver of sovereign immunity to a suit brought by a taxpayer against the United States which challenges the validity of a federal tax lien and sale so long as the

taxpayer refrains from contesting the merits of the underlying tax assessment itself. The district court thus had jurisdiction to hear this action under that provision in combination with 28 U.S.C. § 1340.

■ Finally, in our view neither the Declaratory Judgment Act nor the Anti-Injunction Act operates to deprive the district court of the jurisdiction it would otherwise have to resolve this matter. Admittedly, any challenge to the validity of a federal tax lien and sale indirectly interferes with the tax collection process which those statutes are designed to protect from undue litigation outside the Tax Court. However, when a taxpayer refrains from contesting the merits of the underlying tax assessment, his attack on a federal tax lien and sale under § 2410 does not cause any greater interference with the tax collection process than a similar suit brought by a third party under that statute. Quite obviously, the Declaratory Judgment Act poses no barrier to a suit by a third party to clear his property of a federal tax lien since the quiet title action specifically mandated by § 2410 is in substance a suit for a declaratory judgment. Likewise, the Anti-Injunction Act has been interpreted so as not to prohibit such third party suits. *United States v. Coson, supra* at 458–59. We see no reason in policy or logic to treat an action brought by a taxpayer in a different manner. *Yancelli v. Nash, supra.* We therefore conclude that both the Declaratory Judgment and the Anti-Injunction Acts are inapplicable in the circumstances of this case.

The judgment of the district court will be vacated and this case remanded for further proceedings not inconsistent with this opinion.

GARTH, Circuit Judge (concurring):

I agree that the judgment of the district court must be vacated and the case remanded for further proceedings. However, I believe the majority's reliance upon 28 U.S.C. § 2410(a)(1) as a waiver of sovereign immunity is at odds with both the explicit provisions of the statute as well as its legislative history. Consequently, I would hold that the elaborate and detailed seizure and sale provisions of the Internal Revenue Code, 26 U.S.C. §§ 6331, 6335, of necessity provide an implied waiver of immunity where it is alleged that the Internal Revenue Service (IRS) has failed to comply with these Congressional mandated directives.

This Circuit has long recognized in the context of suits commenced under 28 U.S.C. § 1340,[1] that without a waiver of sovereign immunity, "[i]t is, of course, clear and undisputed that [a] suit against the United States is not maintainable . . . ." *First Nat'l Bank of Emlenton, Pa. v. United States,* 265 F.2d 297, 299 (3d Cir. 1959). Although the United States has consented to be sued under 28 U.S.C. § 2410(a)(1), that statute in my opinion, does not apply to the facts presented here. Under § 2410(a)(1),

. . . the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—

(1) to quiet title to, . . . real or personal property *on which the United States has or claims a mortgage or other lien.* (Emphasis added.)

Aqua Bar & Lounge, Inc. (Aqua Bar) has sought a declaration that the seizure and sale of its liquor license by the defendant United States was unlawful under 26 U.S.C. §§ 6331, 6335.[2] The uncontested allegations

1. 28 U.S.C. § 1340 provides in pertinent part:
 The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue . . . .

2. Section 6331 provides for a levy and distraint to effect the collection of taxes. Section 6335 describes the manner in which the seizure and

sale of such property is to be conducted. In pertinent part § 6335 requires:
 (a) . . . As soon as practicable after seizure of property, notice in writing shall be given by the Secretary . . . . Such notice shall specify the sum demanded and shall contain, in the case of personal property, an account of the property seized
 . . . . .

of the complaint indicate that at the time this suit commenced the IRS sale of the license to defendant Saltz had already been consummated. Thus, it is quite clear to me that where the United States has seized and then sold the plaintiff's liquor license there can be property "on which the United States *has or claims a mortgage or other lien.*" (Emphasis added.) 28 U.S.C. § 2410(a)(1).

Moreover, the legislative history of § 2410(a)(1) indicates that it is inapplicable to the situation presented here. In *Quinn v. Hook,* 231 F.Supp. 718, 720 (E.D.Pa.1964), *aff'd* 341 F.2d 920 (3d Cir. 1965), District Judge Freedman, after examining the legislative history of § 2410, explained:

> By this provision the Government has consented to be sued "in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter, to quiet title to or for the foreclosure of a mortgage or other lien upon real or personal property on which the United States has or claims a mortgage or other lien." It was not until 1942 that the remedy of quieting title was added to the statute which theretofore had dealt only with the foreclosure of a mortgage or other lien on property on which the United States had or claimed a mortgage or other lien. The purpose of the amendment, as clearly stated in the House and Senate reports, "is to permit the United States to be made a party defendant in cases involving foreclosure of mortgages or liens on personal property and to provide a method to clear real estate titles of questionable or valueless Government liens." Its passage was recommended by Attorney General Jackson in order to protect good faith purchasers of real estate and foreclosing mortgagees. (Footnotes omitted.)

*See also United States v. Coson,* 286 F.2d 453, 457 (9th Cir. 1961). *Quinn* involved an attack upon the merits of a tax assessment, and not upon the seizure and sale of any property. However, the discussion of the legislative history in *Quinn* conflicts with the conclusion reached by the majority here.[3] Nothing in the words of the statute or the legislative history indicates that § 2410(a)(1), which only serves the purpose of providing a vehicle to quiet title of property where the United States has or claims a lien or mortgage, is applicable where an attack has been made upon the *seizure* and *sale* of property.

Nor are any of the cases cited by the majority convincing as to the availability of § 2410(a)(1) in the circumstances presented here. *Popp v, Eberlain,* 409 F.2d 309 (7th Cir.), *cert. denied,* 396 U.S. 909, 90 S.Ct. 222, 24 L.Ed.2d 185 (1969), involved a suit against certain individuals and the United

(b) . . . The Secretary . . . shall as soon as practicable after the seizure of the property give notice to the owner, . . . and shall cause a notification to be published in some newspaper published or generally circulated within the county wherein such seizure is made, or . . . post such notice at the post office nearest the place where the seizure is made, and in not less than two other public places. Such notice shall specify the property to be sold, and the time, place, manner, and conditions of the sale thereof.

\* \* \* \* \* \*

(d) . . . The time of sale shall not be less than 10 days nor more than 40 days from the time of giving public notice under subsection (b). . . .

(e) *Manner and conditions of sale.—*

(1) . . . Before the sale the Secretary . . . shall determine a minimum price for which the property shall be sold, and if no person offers for such property at the sale the amount of the minimum price, the property shall be declared to be purchased at such price for the United States; . . .

(2) . . . The Secretary . . . shall by regulations prescribe the manner and other conditions of the sale of property seized by levy. . . . Such regulations shall provide:

(A) That the sale shall not be conducted in any manner other than—

(i) by public auction, or

(ii) by public sale under sealed bids.

\* \* \* \* \* \*

(D) Whether payment in full shall be required at the time of acceptance of a bid . . . . .

3. This Court, in a *per curiam* opinion, affirmed the district court's judgment in *Quinn* "for the reasons so well stated by Judge Freedman in his opinion reported at 231 F.Supp. 718 (E.D. Pa.1964)."

States to set aside various tax sales of real property. The district court found a waiver of immunity as to the United States in 28 U.S.C. § 2410, "on the theory that the action was in the nature of an action to quiet title." 409 F.2d at 312. The Seventh Circuit, "[a]lthough beset by serious doubt," agreed that the district court had properly determined that immunity had been waived. However, it did not set forth any basis or analysis to support its conclusion. *Id.* Thereafter, in *Little River Farms, Inc. v. United States*, 328 F.Supp. 476 (N.D.Ga. 1971), the district court relying upon *Popp, supra,* found that the validity of a tax sale under 26 U.S.C. § 6335 could be challenged under 28 U.S.C. § 2410. The court explained its decision as follows:

As the Court views the situation, the taxpayer has a right under § 6335 but no remedy for enforcing it except § 2410.

328 F.Supp. at 479. Thus, neither *Popp* nor *Little River Farms* offers any reasoning in support of the conclusion reached.

While I sympathize with the majority's efforts to fashion a remedy which would correct an otherwise outrageous result, I, nevertheless, cannot join the majority in artificially bending and straining the unambiguous words and legislative history of § 2410(a)(1) so as to allow suits against the United States for seizures and sales of property in violation of the Code. At issue here are two fundamental rights: the inviolability of the private ownership of property and the government's entitlement to ensure the collection of its taxes. Chief Justice Marshall, writing for the Supreme Court in 1821, stated with respect to government sale of private property:

That no individual or public officer can sell, and convey a good title to, the land of another, unless authorized so to do by express law, is one of those self-evident propositions to which the mind assents, without hesitation; and that the person invested with such a power must pursue with precision the course prescribed by

law, or his act is invalid, is a principle which has been repeatedly recognized in this court.

*Thatcher v. Powell*, 19 U.S. (6 Wheat.) 54, 56, 5 L.Ed. 221 (1821), quoted in *Reece v. Scoggins*, 506 F.2d 967, 971 (5th Cir. 1975). Congress has mandated elaborate procedures to be followed by the IRS in the levy, distraint, and sale of property to satisfy a tax lien. These requirements serve to safeguard the value of property seized and "are designed to protect the taxpayer by giving him an opportunity to be present at the tax sale and bid on the property." *Reece v. Scoggins, supra* at 971.

Since no sections of the Internal Revenue Code explicitly waive sovereign immunity where it is alleged that the IRS has violated the seizure and sale provisions, the United States contends that Aqua Bar's suit must be dismissed. It would appear axiomatic that whenever Congress directs in an unambiguous, detailed manner prescribed, protective procedures to be taken by a government agency, but fails to provide either sanctions or a method of enforcement in the event its mandate is ignored, a waiver of sovereign immunity necessarily must be inferred in order to enforce the legislative will. If it were otherwise, Congressional mandates such as the provisions of §§ 6331, 6335 could be treated not as obligatory but rather as mere recommendations which the Internal Revenue Service could violate negligently or intentionally behind a shield of sovereign immunity. Neither logic nor reason should permit such a result. In light of the explicit provisions and mandatory terms of §§ 6331, 6335, I would imply a waiver of sovereign immunity where a complaint, the allegations of which must be accepted as true,[4] challenges only the validity of the seizure and sale under those statutes.

Similarly, I do not believe that 28 U.S.C. § 2201 prevents any declaratory judgment action against the United States. That section provides:

4. The allegations of Aqua Bar's complaint must be accepted as true for purposes of considering a motion to dismiss under Rule 12(b), Fed.R.

Civ.P. *Hochman v. Board of Education*, 534 F.2d 1094 (3d Cir. 1976).

In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes*, any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. (Emphasis added.)

At issue here is whether the Internal Revenue Service complied with the provisions of the Code in the seizure and sale of Aqua Bar's license. No question is presented concerning the validity of the tax assessment. Thus I would conclude that this suit is not one "with respect to Federal taxes" under 28 U.S.C. § 2201.

Aqua Bar's complaint also seeks injunctive relief against defendant Saltz, the purchaser of its license. The district court held that the Anti-Injunction Statute, 26 U.S.C. § 7421(a), divested it of power to enjoin Saltz's application for a transfer of the liquor license to his name. Like the majority I do not agree with that conclusion.

Section 7421(a) provides, except in certain special circumstances that are not relevant here, that

. . . no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

The Supreme Court has stated with respect to the Anti-Injunction Statute:

The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue. (Footnote omitted.)

*Enochs v. Williams Packing Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). However, Aqua Bar does not dispute the tax assessment. Rather, Aqua Bar seeks to enjoin the transfer of the liquor license which allegedly was improperly seized and sold in violation of the Internal Revenue Code. Since such an injunction does not seek to attack the tax assessment itself, I would hold that this is not a suit "for the purpose of restraining the assessment or collection of any tax" but merely an action to enforce IRS compliance with Congressional mandates. *Reece v. Scoggins, supra. See also Margiotta v. District Director of Internal Revenue*, 214 F.2d 518 (2d Cir. 1954).

Consequently, even though I do so on different grounds, I concur in the majority's decision to vacate the district court's order and remand for further proceedings.