Maurice J. McCARTHY, individually and as Executor of the Estate of Catherine C. McCarthy, Deceased, Plaintiff,

v.

UNITED STATES of America, Donald E. Bergherm and J.S. Straughn, Defendants.

No. 81 C 6009.

United States District Court, N.D. Illinois, E.D.

May 10, 1983.

al property of the plaintiff for allegedly unpaid federal estate taxes. The plaintiff individually and as executor of the estate challenges the legality of the lien and seeks to enjoin its enforcement. He also seeks compensatory and punitive damages alleging a deprivation of his Constitutional rights. The case is now before this Court on the defendants' motion for summary judgment in which defendants have raised a number of immunity and statutory defenses. Though this Court sympathizes with plaintiff's frustration regarding final settlement of his tax liability, it finds that no genuine issue of material fact is presented, and that defendants are entitled to summary judgment.

On May 16, 1978, plaintiff filed a federal tax return (Form 706) with the Internal Revenue Service showing $3,426.47 in estate taxes due from the Estate of Catherine McCarthy. Contemporaneously, plaintiff delivered to the IRS a cashier's check for this amount. In July, 1978 and again in November, however, plaintiff received from the IRS a request for taxes due in an amount far above that which was shown on plaintiff's original return.[1] Between the receipt of these notices plaintiff also received a closing letter dated September 27, 1978. Plaintiff's tax liability as set forth in that letter contradicted that which was shown in the earlier and later notices. According to the letter, which expressly stated it was not a formal closing agreement,[2] plaintiff's net estate tax was $3,426.47, a figure corresponding to the amount shown originally on plaintiff's return. In addition, however, $1,010.81 in penalties was assessed. Plaintiff has never disputed the amounts contained in the letter, however, having received conflicting requests for payment, he refrained from paying any more than the $3,426.87 which he submitted with his original return. Plaintiff's attempts to rectify the problem through dis-

William J. Kilbridge, Charles R. Purcell, Chicago, Ill., for plaintiff.

Dan K. Webb, U.S. Atty. by Roderick A. Palmore, Asst. U.S. Atty., Chicago, Ill., James K. Wilkens, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendants.

## ORDER

BUA, District Judge.

The dispute in this case stems from the filing by an IRS collecting officer of a federal tax lien against all real and person-

---

1. On July 31, 1978, the Internal Revenue Service issued to plaintiff a request for payment in the amount of $21,679.86. A second notice of balance due, dated November 6, 1978, shows plaintiff's total liability to be $22,296.63.

2. The contents of a formal closing agreement would have had a binding effect upon the IRS. See Dorl v. Commissioner of Internal Revenue, 507 F.2d 406, 407 (2nd Cir.1974).

cussions with various IRS officials were unsuccessful.

On April 30, 1981, plaintiff received another letter from the IRS, the contents of which form the heart of this dispute. The letter, signed by defendant Bergherm and issued by defendant Straughn, informed plaintiff that he would be subject to a levy upon all his real and personal property within ten days if he failed to pay his federal taxes as had previously been demanded, and as shown on the back of the letter. The figure this time was $1,509.96, which was composed of $1,010.81 in penalties, (the amount shown in the September, 1978 closing letter), $252.33 in assessed interest, and $246.82 in "accumulated interest." The only portion of this amount which plaintiff disputed and still refuses to pay is the $246.82 accumulated interest.

Following receipt of this letter, plaintiff finally submitted to the IRS his payment for $1,010.81 in assessed penalties plus $252.33 in penalties. He then informed defendant Straughn of his refusal to pay the $246.82 accumulated interest, taking the position that this constituted interest on a penalty and that such interest could be imposed only after there has been demand for payment. It was, and apparently still is, plaintiff's understanding that prior notices of July and November, 1978 were erroneous and withdrawn. Straughn, nevertheless, explained that a demand in an amount of $22,296.01 had been made, presumably referring to the November notice, and that if that be erroneous, it was not within his authority to abate it. Straughn then informed plaintiff that he would have to pay the accumulated interest until the matter could be resolved and that refusal to pay would result in the filing of a lien for the full amount, $22,296.80. Plaintiff remained adamant, however, and notice of tax lien was ultimately filed by Straughn with the Recorder of Deeds in Cook County, Illinois on August 6, 1981.

Without having paid the $246.82 accumulated interest, plaintiff commenced this suit seeking compensatory and punitive damages against Straughn alleging both violations of his Constitutional rights and various state-law-based tort claims; a declaration that the lien constitutes a cloud upon his title to the property and that it is null and void; an injunction against its enforcement and mandamus ordering its release. Defendants have moved for summary judgment raising immunity as a defense to the damage claims, and the Anti-Injunction and Declaratory Judgment Act (26 U.S.C. § 7421(a) and 28 U.S.C. § 2201 respectively) as bars to any equitable relief.

## I. DAMAGE CLAIM AGAINST IRS AGENT STRAUGHN

Plaintiff claims that IRS Agent Straughn filed a Notice of Tax Lien against his property without legal justification and in bad faith. The complaint alleges: that prior notices for assessed taxes, a prerequisite for the filing of any tax lien, were based upon erroneous amounts and have subsequently been withdrawn; that plaintiff has fully satisfied his estate tax liability; that notwithstanding knowledge of these matters, Straughn filed a notice of lien with intent to harass, embarrass and intimidate plaintiff. Seeking compensatory and punitive damages against Straughn, the plaintiff invokes this Court's jurisdiction under 28 U.S.C. § 1331, alleging a violation of his fifth amendment right to due process and fourth amendment right against unlawful seizure of property. Pendent to his Constitutional claim is a claim based on a violation of state tort law.

The defendant denies any bad faith conduct on his part and raises as a defense the doctrine of immunity in all its forms—sovereign, absolute, and qualified. The Court does not reach defendants' immunity arguments since plaintiff has failed to set forth a constitutional basis which would support his cause of action.

Plaintiff has characterized his claim against the defendant as a constitutional tort or what is commonly known as a *Bivens* action. *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). This type of suit is one for damages against a federal official

whose conduct violates a "specific federal constitutional guarantee." *Simon v. United States,* 644 F.2d 490, 496 (5th Cir.1981). In the instant case, plaintiff has failed to make out a claim against Straughn based upon a violation of either the fourth or fifth amendment.

The complaint alleges that Straughn violated plaintiff's fourth amendment right against unlawful seizure by filing a lien against his property. There is no fourth amendment deprivation, however, where the government, in an attempt to collect taxes, does not enter the taxpayer's own premises. *Hutchinson v. United States,* 677 F.2d 1322, 1328 (9th Cir.1982) *citing G.M. Leasing v. United States,* 429 U.S. 338, 354, 97 S.Ct. 619, 629, 50 L.Ed.2d 530 (1977). The filing of the tax lien by Straughn did not involve an invasion of plaintiff's premises or seizure of his personal property and as such cannot establish a fourth amendment violation. *See Christy v. Keenan,* 81–2 U.S.T.C. ¶ 9701 (D. Md. 1980).

Plaintiff's reliance upon the fifth amendment as a basis for a constitutional claim against Straughn is equally unavailing. The gist of plaintiff's claim is that Straughn harassed him into paying taxes which are not due and owing and thereby has "taken" his property without due process.[3]

In *Rutherford v. United States,* 528 F.Supp. 167 (W.D.Texas, 1981), the Court, addressing precisely the same argument, dismissed the suit for failure to state a claim based upon a constitutional violation. The plaintiff alleged that an IRS agent audited his return with intent to harass him into paying taxes which were not due. The Court found the allegation could not support a claim based upon the fifth amendment's proscription against the taking of property without due process, since admin-

istrative remedies under the Internal Revenue Code were available "to compensate plaintiffs for any wrongful property loss that they may have suffered." 528 F.Supp. at 171. The Court relied primarily on *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) where the Supreme Court held a prisoner's due process rights were not violated by prison officials who negligently lost personal property items belonging to the prisoner. Of significance to the *Rutherford* Court was *Parratt's* reliance upon the adequacy of state remedies which were available and considered sufficient to compensate plaintiff for his property loss.[4] *Rutherford* analogized the sufficiency of the remedy in *Parratt* to that available to the taxpayer claiming to have been wronged by an erroneous tax assessment. These remedies include a redetermination of one's tax assessment prior to payment in the Tax Court or a suit for refund in the District Court upon payment.

The analysis in *Rutherford* is fully applicable to the instant case. Here the plaintiff, as in *Rutherford,* disputes the validity of his tax assessments, bringing a damage suit alleging that he has been harassed and intimidated into payment. He does not claim he was denied an opportunity to contest the merits of the assessment in the Tax Court or that he has been prevented from paying and seeking a refund in this Court. Where constitutionally valid remedies such as these exist, *see Phillips v. Commissioner,* 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931), and plaintiff does not allege he was precluded from their use, the requirements of due process are satisfied. *See Flower Cab Company v. Petitte,* 685 F.2d 192 (7th Cir.1982) (no due process violation where there are adequate post-deprivation remedies). *Compare Sonntag v. Dooley,* 650 F.2d 904 (7th Cir.1981) (due process violation in a *Bivens* action recog-

---

**3.** There has been no "taking" of property here in the literal sense, there being only the filing of a lien. For purposes of this analysis, however, this Court will assume this constitutes a taking for purposes of the Fifth Amendment.

**4.** Although *Parratt* dealt with 42 U.S.C. § 1983, thus involving State actors and the Due Process clause of the Fourteenth Amendment, this Court sees no reason why its analysis would be inapplicable to a claim like this, involving federal officials and the Due Process clause of the Fifth Amendment.

nized where plaintiff was denied access to administrative remedies).

Since this Court finds that the complaint fails to state a Constitutional claim, it would be improper for it to consider the state law claim. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1965).

## II.  EQUITABLE RELIEF

Aside from damages, plaintiff also seeks injunctive and declaratory relief. He asks this Court 1) to enjoin defendants Straughn and Bergherm from further enforcing the lien by way of foreclosure or levy, and 2) to issue a declaratory judgment against the United States declaring the lien to be null and void. Jurisdiction purportedly rests upon 28 U.S.C. § 1340.[5] This Court finds, however, the Anti-Injunction and Declaratory Judgment Acts bar both these claims.

The Anti-Injunction Act, 26 U.S.C. § 7421, expressly prohibits the maintenance of any suit "for the purpose of restraining the assessment or collection of any tax."[6] The statute is aimed at "the protection of the government's need to assess and collect taxes with a minimum of pre-enforcement judicial interference." *Rappaport v. United States,* 583 F.2d 298, 302 (7th Cir.1978), *quoting Bob Jones University v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 2045, 40 L.Ed.2d 496 (1973). Plaintiff's suit to enjoin enforcement here is essentially based upon an erroneous assessment. This alone, however, is not enough to overcome the statutory prohibition embodied in the Act.

Equally unavailing to plaintiff's case is the narrowly drawn judicial exception enunciated in *Enochs v. Williams Packing Company,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). Under *Enochs* an injunction may issue to enjoin the collection of taxes only if (1) under the most liberal view of the law and facts the Government cannot establish its claim and (2) equity jurisdiction otherwise exists (i.e. there is irreparable injury and the legal remedy is inadequate). 370 U.S. at pp. 6–8, 82 S.Ct. at pp. 1128–29. Neither of these requirements is satisfied here.

To adequately address the first prong of this test it is incumbent upon the Government to produce some factual basis for its assessment. *Commissioner of Internal Revenue v. Shapiro,* 424 U.S. 614, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976). Here the Government in support of its motion for summary judgment and in response to a discovery request has produced numerous tax records and documents. Though these records do reflect some inconsistency regarding plaintiff's actual tax liability, there is, at least, some factual basis for the Government's assessment. This is not a situation where as in *Shapiro* the government seized and held property in satisfaction of a tax claim for which no factual support was provided. Indeed, plaintiff himself concedes having received a letter dated July 21, 1978 pointing out an arithmetic error in his original return as the basis for the additional assessed amount which is at issue here. Though it may be, as plaintiff vigorously argues, that it is the IRS whose calculations are in error, it does not follow that, "under no circumstances could the government ultimately prevail." *Enochs v. Williams Packing Company,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1963).

Even assuming, however, that the first prong of the *Enochs'* test were satisfied, plaintiff has not met the second requirement, since he has failed to plead any

---

5.  Alternatively, 28 U.S.C. § 1346(a)(2), the Tucker Act, is alleged to support plaintiff's claim for declaratory relief against the United States. Such reliance, however, is misplaced since § 1346(a)(2) does not empower federal courts to issue declaratory judgments. *Lee v. Thornton,* 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975).

6.  The pertinent provision is 26 U.S.C. § 7421(a) which states: "(a) Tax: Except as provided in sections 6212(a) and (c), 6213(a), 6672(b), 6694(c), 7426(a) and (b)(1) and 7429(b), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

None of the exceptions are applicable here.

facts "establishing that his remedy in the Tax Court or in a refund suit is inadequate to repair any injury caused by an erroneous assessment . . ." *Commissioner of Internal Revenue v. Shapiro,* 424 U.S. 614, 629, 96 S.Ct. 1062, 1071, 47 L.Ed.2d 278 (1975). Nowhere in his complaint or in his brief in opposition to defendant's motion for summary judgment does plaintiff allege the inadequacy of his administrative remedies. The Tax Code provides a taxpayer with an opportunity to redetermine his tax liability without having to pay. *See* 26 U.S.C. § 6213. Alternatively, a taxpayer may elect to pay first and sue for a refund in the District Court or Court of Claims pursuant to § 1346(a)(1). As in *Laino v. United States,* 633 F.2d 626, 630 (2nd Cir.1980) (*per* Justice Friendly), plaintiff has "utterly failed to explain why [he] chose not to follow this generous avenue of relief. Under these circumstances, [he] cannot be heard to complain [he] now lack[s] an adequate remedy at law." *See also United States ex rel. Foster v. Regan,* 535 F.Supp. 739 (N.D.Ill.1981). Given, therefore, the fact that the Government has offered some factual basis for its assessment and that plaintiff has failed to establish the requisite equitable considerations, the requirements of *Enochs* have not been met and plaintiff's request for injunctive relief is denied.

Similarly, this Court finds plaintiff's claim for declaratory relief to be barred by the Declaratory Judgment Act which proscribes the issuance of declaratory judgments "with respect to federal taxes." 28 U.S.C. § 2201. This prohibition has been held to be "at least as broad as the Anti-Injunction Act." *Bob Jones University v. Simon,* 416 U.S. 725, 733 n. 7, 94 S.Ct. 2038, 2044 n. 7, 40 L.Ed.2d 496 (1973). Thus to the extent that plaintiff's claim for injunctive relief is barred by the Anti-Injunction

Act, his claim for declaratory relief also requires dismissal. *Rappaport v. United States,* 583 F.2d 298, 302 (7th Cir.1978).[7]

The foregoing statutory prohibitions evince a Congressional policy strongly disfavoring judicial interference in the tax collection process. Only in exceptional circumstances would it be proper for a federal court to ignore this irrefutable goal. This Court finds that no such circumstances exist here, and therefore finds it unnecessary to treat plaintiff's further request for mandamus relief against officials of the IRS. Defendant's motion for summary judgment is therefore granted.

IT IS SO ORDERED.

---

**7.** Plaintiff relies heavily upon *Aqua Bar & Lounge,* 539 F.2d 935 (3rd Cir.1976) where the Third Circuit found the Anti-Injunction and Declaratory Judgment Acts inapplicable to a taxpayer's suit challenging the legality of an IRS seizure and sale of personal property to satisfy unpaid taxes. That case, however, is completely distinguishable. *Aqua Bar's* holding was premised upon the fact that the taxpayer "re-

frain[ed] from contesting the merits of the underlying tax assessment itself." *Id.* at 939–940. In contrast, plaintiff here attacks the validity of a lien principally because it stems from an assessment alleged to be erroneous. This attempt to "collaterally assail the merits of the underlying assessment" is wholly unauthorized. *Id.* at 938.