FELIX FITTICHAUER

*v.*

METROPOLITAN FIRE PROOFING COMPANY and ELMER H. GERAN, auditor, &c.

[Decided August 31st, 1905.]

1. Nature of the statutory action for quieting titles and proper procedure therein considered.

2. Under the act for quieting titles to real estate, it is unnecessary for the complainant to set forth the particular character of the defendant's claim in the bill of complaint.

3. If, in such a suit, the defendant affirmatively pleads a legal title, either party has an absolute right to have an issue at law for the settlement of the legal controversy, and, subject to the power to order a new trial, the court of chancery is bound by the result of such issue.

4. If the defendant denies the jurisdictional facts of peaceable possession by the complainant, non-pendency of any test suit, and incapacity of complainant to bring a test suit at law or in equity, the court will first try the issue of jurisdiction, on which the question of the respective titles of the parties will not be considered.

5. In a suit to quiet title, the complainant alleged that his grantor, acting for himself and his co-owner, prior to August 11th, 1902, entered into a written contract for an exchange of the property in question, which was partly carried out by the delivery of a deed to the property to be exchanged, and that on August 11th, 1904, four days before the attachment, under which the defendant claimed, was issued, the conveyance of the property in question was made and delivered to complainant, but that, because it had not been properly acknowledged, it was taken away by one of the grantors to be acknowledged, and was not returned until August 15th, 1904, on which date the attachment was issued, but there was nothing to show whether the attachment preceded or succeeded such delivery.—*Held*, that the bill is not demurrable as showing a valid legal title in defendant.

On demurrer to bill.

*Mr. Robert H. McCarter,* for the demurrant.

*Mr. Frank P. McDermott, contra.*

STEVENSON, V. C.

My conclusion is that the demurrer should be overruled.

1. It will probably be a useful preliminary to the present investigation if we consider the nature of the statutory action provided by the act of March 2d, 1870, commonly referred to as the act for quieting titles, under which the complainant's bill is filed.

The purpose of the statute is not only to quiet titles, but "to compel the *determination* of claims to real estate in certain cases." The object of the statute has frequently been pointed out in the decisions of this court and of the court of errors and appeals. The legislature did not provide a new statutory action in favor of a complainant who had already an available action at law or suit in equity in which he could obtain adequate relief. *Jersey City* v. *Lembeck, 31 N. J. Eq. (4 Stew.) 255; Van Houten* v. *Van Houten, 68 N. J. Eq. 358.* It may be that the statute embraces within its scope and regulates suits in equity under the ancient jurisdiction of the court of chancery classified as bills *quia timet,* or bills of peace. A complainant may have an election to proceed to have a cloud removed from his title either in the old form, according to the rules of practice and pleading which govern ordinary equity suits, or he may proceed in the very different form prescribed by this statute. This is one of several matters which I do not pause to consider.

The point to be kept in mind in examining this peculiar statute is that its main object is expressed in the first clause of its title, viz., to compel the *determination* of claims to real estate in certain cases. The "certain cases" are those cases of hardship where the defendant out of possession makes a claim while the complainant in possession has no means of compelling the defendant, either at law or in equity, to submit his claim for determination, and thus have it either established as valid or finally declared void. The great object of the statute is not to afford the complainant a new means of asserting and establishing his title, but to afford the complainant a means of compelling the defendant to either abandon or establish his title, or have it decreed invalid.

The procedure prescribed by this statute in this peculiar suit, in my opinion, has almost uniformly been disregarded in the suits brought under its provisions since its enactment during the last thirty-five years. What the bill of complaint shall contain is expressly prescribed in the act, and why, in all these reported cases, it appears that the bill has gone far beyond the statutory requirements I am entirely unable to perceive. The act reads as follows:

"The bill of complaint in such suit shall describe the lands with certainty and shall name the person who claims or is claimed, or reputed to have such title or interest in or encumbrance on said lands, and shall call upon such person to set forth and specify his title, claim or encumbrance and how and by what instrument the same is derived or created."

This prescribed demand in the bill that the defendant shall set forth his title in the light of the other phraseology of the act shows plainly that the bill is not required or expected to enter into the details of the defendant's claim. Any allegation in the bill of the particular character of the defendant's claim is practically surplusage. The defendant undoubtedly has a right to disregard all such allegations, and in his answer "set forth and specify" any title, claim or encumbrance which he may wish to endeavor to sustain. The bill may say that the defendant claims under a mortgage or a judgment, but the defendant may in his answer set up an entirely different title by a deed of conveyance.

I think that great confusion has been made by this persistent effort of the complainant to state unnecessarily in his bill the claim which the defendant has made or is "reputed" to have in respect of the land in question. If the complainant proves the jurisdictional facts the result is that the defendant is called upon affirmatively to set forth and maintain by proofs any adverse title or claim which he holds. The pleading of the defendant, if it sets forth a legal title, may be in effect a declaration in ejectment, and if it sets forth an equitable title, it may be in effect a bill in chancery. The complainant is under no obligation even to exhibit his own title until after the defendant has shown title. All that the complainant is obliged to show in

the first instance is that he is in peaceable possession, and that no suit is pending in which the defendant's claim, whatever it may be, may be tested, and also, that he, the complainant, is unable to bring an action at law in which the test can be applied, *Jersey City* v. *Lembeck, supra,* and also, I think, that he, the complainant, is unable, except under the statute, to bring any suit in equity in which such test can be applied. *Van Houten* v. *Van Houten, supra.* When the complainant has shown these jurisdictional facts he awaits the presentation by a proper plead-' ing of the defendant's claim or title before making any disclosure of his own title. *Ward* v. *Tallman,* *65 N. J. Eq.* (*20 Dick.*) *310.* Any defendant may avoid all expense if he sees fit to abandon his claim, and in such case a decree *pro confesso* goes against him without costs. Any defendant, also, who wishes to resent being unnecessarily brought into court may file an answer denying that he has ever made any claim to the land in question, and thereupon he becomes entitled to costs, the complainant not being allowed to contest the truth of such denial in order to obtain costs.

Coming now to the case where litigation occurs in this statutory action we find that the statute also prescribes some things which the litigating defendant must allege in his answer. He is required in his answer to "specify and set forth" his estate or interest, &c., and also set forth "the manner in which and the sources through which such title or encumbrance is claimed to be derived."

If the defendant in this affirmative pleading sets forth a legal title, either party has the absolute right to have an issue at law for the settlement of this legal controversy, and, subject to the power to order a new trial, the court of chancery is "bound by the result of such issue." Where the complainant sets forth an equitable claim, *i. e.*, a claim which he can only assert and have established by a suit in equity, then, in my opinion, neither party can compel the court of chancery to submit finally to the decision of an equitable cause of action by the verdict of a jury in a court of law. *Van Houten* v. *Van Houten, supra.*

If the affirmative pleading of the defendant which the statute

prescribes sets forth a legal claim, and neither party applies for an issue at law, or if such affirmative pleading sets forth an equitable claim, then the court of chancery is to proceed with the suit on the part of the defendant which is thus brought. The statute leaves no doubt as to the course of procedure. It provides that

"when such issue is not requested or as to the facts for which the same is not requested, the court of chancery shall proceed to inquire into and determine such claims, interest and estate *according to the course and practice* of that court."

What is the "course and practice" of a court of equity where a party comes forward as the actor asserting affirmatively his title or interest in real estate for the purpose of having such title or interest determined? The complainant, as we have seen, is not obliged to exhibit his own title in his bill, and ought not, in my opinion, notwithstanding the practice which has prevailed, to unnecessarily undertake to set forth in detail the defendant's claim. A court of equity, "according to the course and practice" which courts of equity have uniformly followed, ought to require the complainant to file a pleading joining issue with the defendant. It is immaterial whether this pleading be called a special replication, a statement (see rule 221 regulating interpleader suits) or a bill of particulars. Where the defendant sets forth an equitable claim, in large numbers of cases the pleading of the complainant in reply thereto would be in effect an answer to a bill in chancery.

Where the defendant denies the jurisdictional facts of peaceable possession by the complainant, and non-pendency of any test suit and incapacity of complainant to bring a test suit at law or in equity, the practice is settled that the court will try, in the first instance, the issue of jurisdiction thus presented, and will not go into the question of the respective titles of the parties until the jurisdictional question has been decided. *Allaire* v. *Ketcham, 55 N. J. Eq. (10 Dick.) 169; Sheppard* v. *Nixon, 43 N. J. Eq. (16 Stew.) 627.*

In *Blakeman* v. *Bourgeois, 59 N. J. Eq. (14 Dick.) 473,*

28

although the answer of the defendant, after denying the plaintiff's peaceable possession, set up the defendant's title, Vice-Chancellor Grey confined the hearing to the question of possession, and having settled that question in favor of the complainant, advised a decree that the complainant had a right to bring the suit.

In *Beale* v. *Blake, 45 N. J. Eq. (18 Stew.) 668, 670,* Vice-Chancellor Pitney raises the question whether the defendant is under any obligation to disclose his title if he denies the jurisdictional facts until the decision of the court on those facts has been rendered. It seems to me that where the defendant denies the jurisdictional facts, the better practice would be to require such denial to be presented by a plea or pleas.

If the "course and practice" in suits under our statute had not been marked out, in a long line of reported cases, inconsistently with the views which I have indicated, I am not sure whether or not the whole statement of the exact nature of the defendant's claim which the complainant unnecessarily inserts in his bill ought not, on demurrer, to be rejected as surplusage. The defendant may make it surplusage by setting up an entirely different claim or title. The act also provides for a decree which "shall fix and settle the rights of the parties in said lands, and the same shall be binding and conclusive on all parties to the suit." The main purpose, as we have seen, of the act is to afford the complainant a means of compelling "the determination of claims" to land of which he holds peaceable possession. If the claim is invalid, the decree will so declare. If the claim is valid, the decree will so declare. The statute seems to recognize the right in the complainant to have the hostile claim or reputed claim made valid and binding if the court finds it to be valid or binding, or to have it declared invalid if such is the decree of the court. There seems to be room for question whether, in case the complainant unnecessarily exhibits in his bill of complaint a title, interest or claim held by the defendant which, according to the allegations of the bill, is valid at law or in equity, it is not the intention of the statute that the defendant should file his answer and then bring on the cause for final hearing on bill

and answer and obtain the statutory decree determining exactly the extent and nature of his title or claim. This result may be precisely what the complainant desires to secure. On the other hand, if the statute is to be deemed to provide the complainant merely with a remedy where he can show that the defendant's claim is invalid—merely the remedy of cutting off a false claim and not also the remedy of establishing and definitely settling the nature and extent of a valid claim—it would seem to follow that the setting forth in the complainant's bill of a valid claim on the part of the defendant would be fatal to the bill on demurrer. If, however, such a demurrer should be sustained, I think it is quite plain that the only practical result would be that the complainant would amend his bill by striking out the description of the defendant's valid claim, thus making the framework of his bill exactly comply with the statutory requirements.

I strongly incline to think that it is bad practice for the complainant to undertake to specify the character, nature or extent of the claims of any of the defendants. Such practice is inconsistent with the fundamental theory of this statute, which is that the complainant is to compel the defendant affirmatively to set forth and maintain his own claim and to allow the defendant to set up any title or claim which he sees fit to set up.

If the complainant files his bill and confines its allegations strictly to the statutory requirements, merely setting forth the names of the persons who deny or dispute his title, or claim to own the land or any interest therein, or hold any lien or encumbrance thereon, and calling upon the persons so named "to set forth and specify" their titles or claims, all difficulty about the practice, it seems to me, would be avoided, and several anomalous features of the practice which has so far prevailed would disappear. The defendant, if he desired to dispute the jurisdictional facts, could do so by an appropriate pleading. If the court decided the issue so presented in favor of the defendant, that would be the end of the controversy. If the court, however, found against the defendant on this issue, the order would be, as in the case of overruling a plea, that the defendant should

answer over, and thereupon the defendant would file his affirmative pleading as prescribed by the statute, setting forth his title or claim, and thereafter the proceeding would follow as above indicated.

Under the practice which seems to have become established, and is sustained by the cases above cited, the defendant's answer is split in two. The court first tries the jurisdictional question which the answer raises, and if the result is not adverse to the complainant, the court holds a further final hearing, in which that part of the answer which sets out the claim or title of the defendant is for the first time noticed and disposed of. The irregularity and anomaly in our procedure under this statute have, I think, been brought about by confusing the ancient bill *quia timet* to remove a cloud from a title in which the complainant sets forth his own title and the defendant's title, and starts out affirmatively with the burden of proof upon him to demolish the defendant's title or claim, with this peculiar statutory action in which the object of the bill is to compel the defendant to take the affirmative, to bring a suit at law or in equity, to set forth any demand of any kind which he sees fit to set forth, and to give the complainant the benefit of a decree relieving the land of which he holds peaceable possession from all claims of the defendant, or establishing those claims and rendering them definite so as to inform the complainant precisely what their character and extent in fact are.

In passing, it may be observed that the practice in interpleader cases for a long time was involved in confusion quite similar to that which I think prevails now under our act to quiet titles. The complainant's bill frequently set forth the contentions of defendants *inter sese,* and the answers of these defendants, like the answers in cases under the statute which we are considering, frequently denied the right of the complainant to the relief of a decree of interpleader, and also set up the claims of the answering defendants against their co-defendants. The result was confusion in the final hearing of interpleader cases, which has practically been removed by rule 221.

2. I do not propose to act upon any of the views above set

forth so far as they are inconsistent with the precedents which apparently have been established without discussion in this state. The question here is whether the complainant has set himself out of court by describing a valid claim on the part of the defendant—a claim which is enforceable at law or in equity against the complainant, and which is so certain in character that this statutory action cannot be usefully employed by the complainant for the definition and "determination" thereof.

I shall not set forth the facts in detail. Upon the oral argument, and in the exhaustive and satisfactory briefs, most of the questions were very distinctly brought out and very thoroughly discussed. There are at least three grounds, I think, for holding that the claim on the part of the defendant, unnecessarily described in the complainant's bill, is not therein exhibited as a definite, ascertained, valid claim affecting the title of the complainant and against which the complainant's title cannot, through the statutory action, to any extent or for any purpose, be "quieted." There may be other grounds which I do not now recall. No effort is made here to discuss exhaustively the merits of these two respective titles which the complainant has seen fit to set forth in his bill of complaint. All that is attempted is to show that the whole contest between the titles of the respective parties, improperly, as I think, disclosed in the bill, is one which calls for investigation, ascertainment and determination, and that the bill, therefore, should properly be retained in its present form, imperfect as it is for that purpose.

(1) The main question, perhaps, to which the greater part of the argument has been devoted is whether the deed of conveyance to the complainant, assuming that it was not delivered and accepted until August 15th, 1904, is prior or subsequent to the attachment of the defendant the Metropolitan Fire Proofing Company, which was issued on that day at an hour and minute not in any way disclosed. Counsel for complainant has expended a great deal of learning and ingenuity in seeking to maintain the proposition that the attachment must be presumed, in the absence of evidence, to have been issued at the earliest moment of the day at which it might have been issued. The

clerk neglected to comply with the recent statute and endorse or record the hour and minute when the attachment was issued. *P. L. 1904 p. 243.* The bill alleges that complainant does not know exactly when this attachment was issued, and calls upon the defendant to set forth and disclose this important fact, which may be conclusive of the entire controversy between the parties. It strikes my mind that a case presenting this situation is an ideal one for the use of this statutory action.

(2) The bill alleges distinctly that the deed of conveyance was delivered to the complainant on August 11th, 1904, four days before defendant's attachment was issued. It is true that the bill alleges that, although the deed was delivered on August 11th, it was taken away by one of the grantors (Campbell) because it had not been properly acknowledged. Although the allegations of the bill on this subject are loosely drawn, and the pleader, while alleging delivery upon August 11th, seems to have considered some action on the part of the court necessary to make such delivery effective, yet, in the absence of specific objections in the demurrer, I think the pleading as a whole must be deemed to allege a complete delivery, so as to pass title on August 11th, which delivery includes acceptance by the grantee. On that day (August 11th), as a part of the whole somewhat complicated transaction, the complainant, as the bill alleges, delivered a deed to the defendant Campbell conveying property in the State of Massachusetts and took back a mortgage for $4,000, which sum he had agreed to lend. The money, however ($4,000), was retained, and I think the inference from all the allegations in the bill is that while the title of the Massachusetts property had passed to the defendant Campbell, and the title of the New Jersey property had passed to the complainant by the respective deeds which are alleged to have been delivered on August 11th, the $4,000 was retained as some security to the complainant that the title of the New Jersey property could be reported favorably by the Title Guaranty Company, and that the conveyance would be properly acknowledged so as to cut off dower rights and be capable of being recorded.

(3) The bill also alleges positively that Campbell, acting for himself and his co-owner of the property in question, on or about August 1st, 1904—certainly some time prior to August 11th, 1904—entered into an agreement with the complainant, the terms of which are set forth, which agreement involved an exchange of the above-mentioned properties, the making of the above-mentioned mortgage and loan, &c. The rule of pleading in New Jersey, however it may be elsewhere, does not require the complainant to specify that an agreement which must be in writing under the statute of frauds in order to be enforceable in fact was in writing. All that is necessary is to allege the agreement, and if the defendant denies the existence of the agreement and sets up the statute, then the complainant must prove a valid agreement, viz., one in writing. Upon the face of this bill it appears that prior to August 11th complainant became the equitable owner of this property by virtue of a contract to purchase the same, and it also appears that he partly carried out this contract by delivering a conveyance of Massachusetts property, which was a part of the consideration, and by entering into possession. It is well-settled law that in such a situation an attachment against the vendor cannot affect the vendee's rights. The attachment seizes only what the vendor is entitled to, viz., any unpaid portion of the consideration.

The whole case, in my opinion, including both the complainant's title and the defendant's title, as exhibited by the bill of complaint, is one calling for determination and settlement in the statutory action in which the bill is filed. I shall advise, therefore, that the demurrer be overruled.