469 Pa. 157 (1976)
364 A.2d 1315
Richard F. JONES, Receiver of Pittsburgh Liquidating Corporation, Appellant,
v.
NEW PITTSBURGH COURIER PUBLISHING COMPANY, a Pennsylvania Corporation.
Supreme Court of Pennsylvania.
Argued September 26, 1975.
Decided October 8, 1976.
Reargument Denied December 8, 1976.
*158 Donald P. Eriksen, Tucker, Arensberg & Ferguson, Pittsburgh, for appellant.
*159 Harvey I. Goldstein, Seymour J. Schafer, Markel, Markel, Levenson & Schafer, Pittsburgh, for appellee.
Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT
O'BRIEN, Justice.
This appeal arises from a final decree in equity which dismissed the complaint of appellant, Richard Jones, who sought an accounting from appellee, the New Pittsburgh Courier Publishing Company (the "New Courier"). Appellant is the court-appointed receiver of Pittsburgh Liquidating Corporation, formerly the Pittsburgh Courier Publishing Company (the "Old Courier"). In 1966, the Old Courier sold the New Courier all of its assets for fifty percent of the New Courier's profits until 1976.
The facts surrounding this appeal are as follows. The Old Courier, a prominent black newspaper, had serious financial problems. Out of a total debt of over one million dollars, the newspaper owed the Internal Revenue Service ("IRS") more than one hundred thousand dollars in unpaid taxes by 1966. Pursuant to the collection provisions of the Internal Revenue Code[1], the IRS obtained liens on all of the Old Courier's assets and was preparing to sell all of the assets to collect part of the unpaid tax bill. At the urging of members of the black community, the IRS agreed to postpone the sale so that a plan could be arranged that would allow the paper to continue operating.
On October 15, 1966, appellee and the Old Courier completed an agreement which provided, inter alia: (1) The Old Courier would convey its assets to the New Courier; (2) The Old Courier would change its name to Pittsburgh Liquidating Corporation for the purpose of *160 winding up the Old Courier's affairs; and (3) The New Courier would pay one-half of its net profits, as defined by the agreement, to Pittsburgh Liquidating for the next ten years. The assets transferred to the New Courier remained encumbered by the IRS liens. The New Courier agreed to supply periodic financial reports to the IRS, as the fifty percent interest in future profits would first be used to pay the tax debt of Pittsburgh Liquidating.
The New Courier, however, failed to make a profit during its early existence. In 1967, upon petition of a stockholder of Pittsburgh Liquidating, the Court of Common Pleas of Allegheny County named appellant the receiver of the company.
By October, 1968, the New Courier had not shown a profit, and the IRS decided to proceed with the sale of the encumbered assets. On December 17, 1968, the IRS levied on all encumbered assets and left a Notice of Seizure at the office of the New Courier. One of the assets was described in the Notice of Seizure as:
"That portion of the interest in said contract of October 15, 1966 for the payment of one-half of the net profits by the New Pittsburgh Courier Publishing Company to the Pittsburgh Liquidating Corporation for a period of ten (10) years."
On December 30, 1968, the IRS conducted an administrative sale at which the New Courier purchased all of the assets, including the interest in the contract.
On January 12, 1973, appellant filed a complaint in equity seeking an accounting of the New Courier's profits in accordance with the 1966 agreement. At a pretrial conference, the chancellor directed the parties initially to litigate the issue of the validity of the IRS sale.[2] If the tax sale was valid, appellant no longer had any rights *161 under the 1966 agreement. On July 10, 1974, the chancellor filed his decree nisi, finding a valid tax sale and dismissing appellant's complaint. Exceptions were filed and on February 3, 1975, the court en banc dismissed appellant's exceptions and entered a final decree, affirming the chancellor's decree nisi.
Appellant argues that the IRS failed to comply with the mandatory notice requirements of the Internal Revenue Code concerning the sale of seized property. We agree and reverse.
The Internal Revenue Code provides, in relevant part:
". . . As soon as practicable after seizure of property, notice in writing shall be given by the Secretary or his delegate to the owner of the property (or, in the case of personal property, the possessor thereof), or shall be left at his usual place of abode or business if he has such within the internal revenue district where the seizure is made. . . ." 26 U.S.C.A. § 6335(a). (Emphasis supplied.)[3]
To validate the sale in question, we must find that the IRS gave Notice of Seizure to the possessor of the interest in the 1966 agreement.
In the instant case, the personal property is the right to receive payment of one-half of the New Courier's profits.[4] The chancellor determined that since the New Courier would have to pay one-half of its net profits (should any exist) to appellant, the New Courier was the *162 possessor of appellant's interest in the 1966 agreement. We do not agree with this proposition.
When determining the nature of legal interests an individual has in property in the application of the Internal Revenue Code, both state and federal courts must apply state property law. Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). This Commonwealth recognizes that an obligor of a contract possesses no proprietary interest in that contract. As this court stated in Smith v. Glen Alden Coal Co., 347 Pa. 290, 299, n. 1, 32 A.2d 227, 232 (1943):
"`Debts . . . are not property of the debtors; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property . . . .' State Tax on Foreign-Held Bonds, 15 Wall. 300, 82 U.S. 300, 320, 21 L.Ed. 179 (1872)."
Pennsylvania does not recognize that the New Courier had a possessory right in appellant's property, i.e., the right to receive one-half of the New Courier's profits under the 1966 agreement. The Notice of Seizure left with the New Courier failed to comply with the mandate of the Internal Revenue Code, because the New Courier was not the possessor of the personal property in question.[5]
Once state law has been applied to determine the nature of proprietary interests, state and federal courts must look to federal law for the consequences of ineffective notice. See Popp v. Eberlein, supra. The notice requirements of 26 U.S.C.A. § 6335 are mandatory and require literal compliance. Reece v. Scoggins, 5 Cir., 506 F.2d 967 (1975). Since the IRS failed to comply with the notice requirements as to the interest in the 1966 agreement, the sale of that property is invalid.[6]
*163 In the instant case, the chancellor decided the tax sale was valid and thus dismissed appellant's complaint. Having determined otherwise, the chancellor's decree is vacated.
Decree vacated. Case remanded for proceedings consistent with this opinion.
JONES, C.J., did not participate in the consideration or decision of this case.
POMEROY, J., filed a concurring opinion in which NIX, J., joined.
ROBERTS, J., filed a dissenting opinion.
POMEROY, Justice (concurring).
I agree with the Court that the federal tax sale involved in this case was invalid because the Internal Revenue Service, although it did in fact give notice of the tax sale as required by Section 6335(b) of the Internal Revenue Code of 1954,[1] nevertheless failed to comply with the mandatory notice of seizure requirement of Section 6335(a) of the Code. Johnson v. Gartlan, 334 F.Supp. 438 (E.D.Va. 1971), rev'd on other grounds, 470 F.2d 1104 (4th Cir.), cert. denied, 414 U.S. 865, 94 S.Ct. 122, 38 L.Ed.2d 85 (1973). I append this concurrence to suggest that our disposition of this appeal does not end this case. As a result of pretrial conferences the Chancellor *164 limited the issue to be litigated in the first instance to the validity of the tax sale. Appellee, the "New Courier", however, raised several defenses in its answer and new matter, including that of laches.[2] The invalidity of the sale having now been established, the trial court should proceed to consider the other issues raised by the pleadings but not decided at the initial trial.
NIX, J., joins in this concurring opinion.
ROBERTS, Justice (dissenting).
In sustaining the validity of the federal tax sale, the chancellor found that the Internal Revenue Service had complied with the notice requirements of section 6335(a) and (b) of the Internal Revenue Code of 1954. Despite the finding of the chancellor, which was affirmed by the court en banc, the majority reverses the decree because it concludes that the Internal Revenue Service failed to comply with the mandatory notice of seizure requirement of section 6335(a). The majority decides as a matter of law that appellant was entitled to notice of seizure. It then concludes that appellant did not receive notice, a finding properly for the fact-finding court. Although the chancellor found that the notice requirements were fully complied with, he made no specific findings with respect to who was entitled to notice of seizure or whether notice was received by the proper party.
Because of the inconclusiveness of the record, I would vacate the decree and remand for further proceedings on the notice of seizure issue. On remand, appellee should also be permitted to litigate those defenses which were offered but not resolved by the chancellor during the initial proceeding challenging the validity of the tax sale.
NOTES
[1] 26 U.S.C.A. § 6301, et seq.
[2] This determination is incident to the principal action for an accounting under the 1966 agreement. The court must apply Federal Law in determining the tax sale's validity. See Popp v. Eberlein, 7 Cir., 409 F.2d 309 (1969); Article VI, Clause 2, U.S.Const.
[3] The Internal Revenue Code further provides for a Notice of Sale, 26 U.S.C.A. § 6335(b). Both the Notice of Sale and the Notice of Seizure must be given before the IRS can conduct a valid tax sale. See Pargament v. Fitzgerald, 272 F.Supp. 553 (S.D.N.Y. 1967).
[4] It is necessary to distinguish between the right to receive future profits and the future profits themselves. Although not raised by appellant, the IRS could neither levy nor sell the indefinite and unascertainable future profits. The regulations to the Internal Revenue Code provide:

"A levy extends to . . . obligations which existed at the time of levy. Obligations exist when the liability of the obligor is fixed and determinable. . . ." 26 CFR 301.-6335-1(1) (Emphasis supplied.)
[5] Mr. John Mamula, revenue officer of the IRS, testified that the New Courier received the sole Notice of Seizure.
[6] We express no opinion concerning the other assets sold at the tax sale because that question is not before us.
[1] The Internal Revenue Service mailed a notice of sale, dated December 19, 1968, to the last known address of the taxpayer, the Pittsburgh Liquidating Corporation. Section 6335(b) of the Internal Revenue Code of 1954, providing for notice of sale, states that such notice shall be given "in the manner prescribed in subsection (a) . . . ." Section 6335(a) provides in part: "If the owner cannot be readily located, or has no dwelling or place of business within such [internal revenue] district, the notice may be mailed to his last known address." In this case, the Old Courier ceased doing business as of October 15, 1966 and its successor, the Pittsburgh Liquidating Corporation, apparently did not maintain an office. Thus the mailing of the notice of sale to the Old Courier's last known address fully complied with the statutory requirement of section 6335(b).
[2] The tax sale was held on December 30, 1968 and appellant, the receiver of the Pittsburgh Liquidating Corporation (formerly the "Old Courier"), did not institute the present proceeding challenging the legality of the sale until January 12, 1973.