**Julia A. BROWN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. Nos. 80–1683, 80–2144.

United States District Court, D. New Jersey.

Sept. 12, 1980.

**904**

Juan J. Ryan, New Providence, N. J., for plaintiff.

William W. Robertson, Acting U.S. Atty. by Judy Sello, Asst. U.S. Atty., Newark, N. J. and M. Carr Ferguson, Asst. Atty. Gen. by D. Patrick Mullarkey and Allen R. Mass, Attys., Tax Division, Washington, D. C., for defendant.

## OPINION

BIUNNO, District Judge.

Plaintiff Julia Brown has filed two suits against the United States, and both are before the court on motions by the United States to dismiss under F.R.Civ.P. 12(b).

The first suit was filed in Superior Court of New Jersey under 28 U.S.C. § 2410, a statute which authorizes the United States to be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter, where the suit is of specified kinds.[1] That suit evidently was begun as a summary action, N.J. Court Rule R.4:67, as the papers indicate the procedure on complaint and order to show cause with direction to answer (in lieu of summons). The order to show cause included temporary restraints and set a date for hearing why a preliminary injunction should not issue. Before the return date, the case was removed here by the United States under 28 U.S.C. § 1441 or § 1444. That case is Civ. No. 80–1683.

The second case was filed here, Civ. No. 80–2144, and is filed under 28 U.S.C. § 2409a. (1972).

In both cases, the United States has moved to dismiss under Rule 12(b). The theory of the motions is that the suits, if authorized at all, are permitted only under 28 U.S.C. § 2409a, paragraph (f) of which contains a 12–year statute of limitations, which the United States says has expired. There does not appear to be any statute of limitations for a suit under 28 U.S.C. § 2410. If the statute of limitations applies, the argument is that consent to suit by waiver of sovereign immunity does not

---

1. The Superior Court of New Jersey has undoubted jurisdiction over the subject matter. It is vested with "original general jurisdiction throughout the State in all causes." *N.J.Const. 1947*, Art. 6, § 3, ¶ 2.

exist, and so there is no subject–matter jurisdiction.

Both motions involve matters of fact outside the pleadings, and so must be treated as motions for summary judgment, F.R. Civ.P. 12, and see *DeTore v. Local 245, etc.*, 615 F.2d 980 (CA 3, 1980).

The same facts underlie both cases, and the background, to the extent so far indicated by the present record, shows the following history.

1. A quitclaim deed dated February 28, 1957 from the United States (Public Housing Administration) purported to convey Lot 21 on a subdivision map of Victory Gardens, Morris County, N.J., to Alfred L. Buono, Alfred E. Buono and John L. Buono for a consideration of $5,000; Book F–63 of Deeds, p. 286.[2]

2. From January 23, 1952 to July 7, 1959, five federal tax liens were filed in the Morris County Clerk's Office, three in respect to "Alfred M. Buono," one against "Alfred L. Buono", and one against "Alfred Buono". Index to Federal Liens, p. 103. See 26 U.S.C. § 6321, and NJSA 46:16–13.[3]

3. A quitclaim deed dated June 10, 1961, from the United States (District Director of Internal Revenue) purported to convey Lot 21, Victory Gardens, to the United States recorded in Deed Book 1806, page 976.

4. On September 23 and October 13, 1965, five releases of federal tax lien were filed in the Morris County Clerk's Office in respect to "Alfred M. Buono" (3), "Alfred L. Buono" (1) and "Alfred Buono" (1). Index to Federal Liens, p. 103.

5. A bargain and sale deed dated February 18, 1966, from Alfred L. Buono (unmarried), Alfred E. Buono and his wife Patricia, and John L. Buono and his wife Rose, purported to convey Lot 21, Victory Gardens, to the plaintiff, Julia A. Brown (single). Deed Book 1976, p. 867. A purchase money mortgage to Wyckoff Savings & Loan Ass'n, for $9,500, was simultaneously recorded, Mortgage Book 1137, p. 207.

6. In 1978, Brown was notified by I.R.S. of its claim under the 1961 deed. Discussions are said to have ensued without result and a notice of proposed public sale by the United States triggered the Superior Court suit removed here as Civ. No. 80–1683, and the later one filed here as Civ. No. 80–2144.

The source of the difficulty is that the quitclaim deed from the United States to the United States, while recorded, was not indexed to reflect the name of the taxpayer, Buono, as grantor of the subject property. Evidently, after constructing the retrospective chain of title, the adverse work disclosed the five federal tax liens and their releases, but did not disclose the tax sale deed. For a brief description of this title search process, see *Trend Mills v. Socher*, 4 B.R. 465 (D.N.J., 1980).

From the papers before the court at this early stage, it appears that each of the three Buono grantees to the 1957 deed from the United States acquired a one–third undivided interest as a tenant–in–common. If the tax lien recorded by IRS, and the later 1961 deed to the United States affected the interest of one of these grantees (a point not entirely clear at this stage because two of the grantees are named "Alfred", and because none has the middle initial "M"), then the interest of the United States, at most, involves some kind of claim to a one–third undivided share.

■ Whether the 1961 deed to the United States conveyed ownership, or amounted to

---

2. Conveyances or instruments executed and delivered after July 4, 1931, which purport to "remise, release or quitclaim" to the grantee, in the absence of a contrary intent in the instrument, effectively pass all the estate the grantor could lawfully convey by deed of bargain and sale. NJSA 46:5–3; 46:5–6.

3. Instruments affecting title to or interests in real estate (other than wills) are recorded or filed under New Jersey law in the office of a "county recording officer," see NJSA 46:1–1. In most counties, that officer is the "county clerk". In a few counties, it is the "register of deeds and mortgages". A brief review of the

a mortgage, is also an open question.[4] The record of seizure and sale required to be kept by the Secretary for each internal revenue district, 26 U.S.C. § 6340, copy of which has been supplied by the United States, shows that the sale was to satisfy assessments totalling $936.84, plus advertising costs of $7.02 or $943.86 in all. The date of sale was July 17, 1959, a bit more than 2 years after the property had been sold by the United States for $5,000., and the bid by the United States was for $100., leaving $92.98 as the net proceeds after advertising expense for credit to the assessment.[5]

Under these conditions, it is possible that the deed should be treated as being in the nature of a mortgage, and if that be so, then the suit which is now Civ. No. 80–1683 is one within 28 U.S.C. § 2410 and no statute of limitations seems to apply. See, also, *Hadfield v. Hadfield*, 128 N.J.Eq. 510, 17 A.2d 169 (E & A 1940), holding that a mortgage recorded as a deed does not import constructive notice. See, also, *Dodge v. Jordan*, supra; *Scott v. Stewart*, 1 N.J. 60, 61 A.2d 765 (1948).

On the other hand, if the claim of the United States be a claim of ownership to a one–third undivided interest, and if the 12 year limitation of 28 U.S.C. § 2409a(f) applies, it is still an open question of fact when that period began to run.

The District record of seizure and sale is certified by the collection officer and the District Director on July 20, 1959. The deed to the United States is dated July 11, 1961, and nothing on that sheet suggests that the taxpayer was given any kind of notice that the deed had issued, or should have known that the deed had issued.

The filing of releases of federal lien in 1965 implies some kind of satisfaction of the assessments other than by the sale for a

nominal $100. These facts will need to be developed.

▮ By New Jersey law, there can be no question that once a deed or other instrument is "lodged for record", there is imputed or constructive notice to all who later acquire interests, even though the deed be improperly indexed, or not indexed at all NJSA 46:21–1. See *Schwartz v. Gurnwald*, 174 N.J.Super. 164 (Ch.1980), at p. 171, 415 A.2d 1203, where the major precedents are cited.

▮ But the question on statute of limitations may not turn on constructive notice under NJSA 46:21–1. It more likely will turn on the language and meaning of 28 U.S.C. § 2409a(f). That language seems to contemplate not "constructive notice", but "discovery". The time runs from the date on which a plaintiff or his predecessors in interest "knew or should have known of the claim of the United States." So far as plaintiff Brown is concerned, the indication is that she first "knew" of the claim in 1978. On the present record, it cannot be said that there is no genuine issue that she "knew or should have known" of the 1961 deed, recorded but not indexed to one of her grantors when she took record title in 1966. The 1965 releases of the earlier federal tax liens point the other way.

As to the predecessors in title, it may be that the United States will be able to show knowledge of one of them, the taxpayer, that tax assessments had been made, and that personal service was made of the notice of seizure and notice of sale, 26 U.S.C. § 6335(a) and (b), but it may or may not be able to show that he knew or should have known of the 1961 deed to the United States issued two years after the sale.

If the property consisting of Lot 21, Victory Gardens, was not divisible, so as to

---

applicable statutes in this regard is set out as Appendix A to this opinion.

4. Examples of conveyances in the form of deeds, claimed in fact to be mortgages, are *Dodge v. Jordan*, 91 N.J.Eq. 42, 108 A. 861 (Ch. 1919); *Scott v. Stewart*, 1 N.J. 60, 61 A.2d 765 (1948).

5. The court has found no statute or decision indicating whether the record required by 26 U.S.C. § 6340 is constructive notice to anyone in the same sense as instruments recorded by a county recording officer, NJSA 46:21–1.

require the whole to be sold, a question which none of the cases deal with will be whether the other tenants in common ought to have been given notice, see 26 U.S.C. § 6335(c).

In this connection, the "claim" of the United States which must be shown to have been known clearly refers to the claim of title under the 1961 deed, not the underlying claim for taxes supporting the sale. This is clear from the language of 28 USC § 2409a(a), referring to "property in which the United States claims an interest." The claim of interest arises under the 1961 deed.

The legislative history supports this view. As shown by House Report No. 90–1559, 1972 U.S. Code Congressional and Administrative News, p. 4547 et seq., the bill had originally passed the Senate as S–216, and the major objections were to the limitations provisions.

The original draft submitted by the Justice Department would have been prospective only. The language was that the Act· would "not apply to any claim or right of action which accrued prior to the date of its enactment." As passed by the Senate, § 2409a(f) would have barred a claim unless action was brought within 6 years after accrual or within 2 years after the effective date of the Act, whichever was later. Accrual would have begun with actual knowledge of the claim of the United States.

In a letter to the House Judiciary Sub-· committee, the Deputy Attorney General took the position that the Senate language would make the bill fully retroactive and would impose a substantial administrative burden on the United States to give notice of its claims of interest (so that actual knowledge would start running the time). He expressed the fear that a fully retroactive provision could bring a flood of litigation on old claims, many of which had already been submitted to the Congress and rejected. He did believe that a reasonable

period of retroactive application would not impose an unreasonable burden and was willing to accept a provision making·the bill retroactive for twelve years. He also suggested that accrual be on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States. He said: "The plaintiff would merely state that he did not learn of the claim of the United States and had no reason to know of the claim more than 12 years prior to the filing of his claim. If the United States wished to assert that the statute of limitations had run, *it would then have the burden of establishing· this fact.*" (Emphasis added). Letter of September 20, 1972, Idem, at 4553.

Precisely the same language appears in House Report No. 92–1559, at p. 4551, and, with minor corrections, in 28 USC § 2409a(f). Thus, the date on which the claim of the United States of an interest in the property became known, or should have become known, is an issue of fact on which this court cannot rule on a derivative motion for summary judgment, assuming that § 2409a(f) applies at all. See *Aqua Bar etc. v. United States,* 539 F.2d 935 (CA 3, 1976) (including the perceptive concurring opinion of Judge Garth); *Hudson County etc. v. Morales,* 581 F.2d 379, at 383 (CA 3, 1978); *Jones v. New Pittsburgh, etc.,* 469 Pa. 157, 364 A.2d 1315 (1976).[6]

One point that must be kept in mind is that titles derived through deeds from the United States are no better or worse than titles derived from other grantors. Under New Jersey land title law, deeds convey no other or better title than the grantor had to convey. Titles derived through tax sales, mortgage foreclosures, executions on judgments, and the like are particularly vulnerable because of the vital need to be assured of the correctness and regularity of the proceedings under which X makes a deed of property, the record title of which is in Y.[7]

6. The terms "suit to quiet title" and bills "quia timet" are used in the legislative history. The history and pattern of equity actions of this kind in New Jersey are briefly reviewed in Appendix B to this opinion.

7. The fact that the record title of Brown's grantors was derived by deed of the United States (through its Public Housing Administration) brings to mind an experience some 30 or

Seizure and sale of property by IRS involves an administrative process conducted without any judicial action or supervision as to correctness or regularity. In recognition of the principle of inviolability of private property, Congress has imposed precise strictures on this process, for the obvious protection of the taxpayer and his property, see *Aqua Bar*, supra, at 939, citing *Thatcher v. Powell*, 19 U.S. 119, 6 Wheat. 119, 125, 5 L.Ed. 221 (1821) and *Reece v. Scoggins*, 506 F.2d 967, at 971 (CA 5, 1975). See, also *U. S. v. Lee*, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171 (1882).

Note, too, other statutory procedures authorized to deal with the general subject, 26 U.S.C. § 7403, § 7424, § 7425.

These already strong policy reasons become even more important when the interests of a third party not the taxpayer are put in jeopardy. It is one thing to say that a taxpayer has a choice between obtaining review of deficiency determinations under 26 U.S.C. § 6213, or can "pay first and litigate later", *Falik v. U. S.*, 343 F.2d 38, at 42 (CA 2, 1965). But a third party, who has no interest in the tax assessment itself has a stronger equity to challenge the regularity of procedures used for seizure and sale when his own record title becomes clouded thereby.

■ The nature and extent of interests in property, especially real property, are governed by state law even when the Internal Revenue Code is applicable, and both federal and state courts must apply state property law, *Aquilino v. U. S.*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *Lum v. Comm'r.*, 147 F.2d 356 (CA 3, 1945).

Once the nature of the proprietary interests has been determined, both federal and state courts must look to federal law for the procedural requirements governing an IRS seizure and sale, *Popp v. Eberlein*, 409 F.2d 309 (CA 7, 1969), and these are mandatory, *Aqua Bar*, supra., and *Reece*, supra.

Thus, in addition to the matter of compliance with procedures, it will first be necessary to establish just what the nature of the taxpayer's interest in the property was at the time of seizure and sale. There may have been mortgage or judgment liens with priority over the federal tax lien. If so, the 1961 deed could only convey subject to those liens, and if they were later satisfied out of the proceeds of the 1966 purchase money mortgage to Wyckoff there may be a subrogation involved.

These hypotheticals are pertinent because a bidder at a public sale must have some knowledge about what a deed to him will convey. If he does not know before the sale, and if the notice of sale is silent on the

more years ago. The Home Owners' Loan Corporation (HOLC) had foreclosed a mortgage and put the property up for sale through a real estate broker. An interested buyer asked a friend, a patent attorney, to handle the matter but the latter demurred since it was not his line of work. He urged the prospect to consult a lawyer to review the contract, have a title search made, and participate in the closing.

Several years later, the buyer again spoke to his friend, asking what to do about a letter from a lawyer who represented a judgment creditor of a predecessor in title, with a claim for some $7,000., indicating that a sale on execution was planned.

When asked whether he had followed the advice to hire a lawyer, the buyer explained he had not, because the broker had said, in substance, "Why waste your money for nothing? You are buying this property from Uncle Sam. What could be better than that?"

On consulting a lawyer, the title search was belatedly made, and it turned out that there were eight valid judgments of record against

the prior owner whose mortgage the HOLC had foreclosed.

All of the judgments had been entered after the foreclosure suit was filed and before judgment. None of the judgment creditors had been named as defendants with junior liens, and since no notice of lis pendens had been filed, had valid judgment liens.

To its credit, although not obliged legally to do so, HOLC undertook to settle out all the open judgments and obtain warrants of satisfaction. The buyer, fortunately, spent no more for the title search and policy than he would have if he had hired a lawyer before he bought. He was lucky. It could have gone the other way.

The point of this account is that when land is purchased from the United States it stands in no better position than anyone else. Titles derived from it are no better than any other title, and must be examined and searched with the same objective and meticulous care as any other title.

point, he is usually entitled to conduct a title search before accepting a deed, or to reject the deed if the public sale turns out to be of a title that is unmarketable. What the law in this regard is on an administrative IRS seizure and sale has not been addressed.

Even more important is the same question, as applied to the new public sale contemplated by IRS. What title or interest would a successful bidder receive? Suppose Brown, the plaintiff, were the successful bidder, and was able to establish that the title of the United States is defective? Could the deed be refused, and the issue tested in a suit by the United States to compel specific performance? Or, suppose no one else but the United States bids; will it issue another deed to itself?[8]

The court has been told in the submissions that plaintiff's application for a preliminary injunction (to have been heard here on the return of the Superior Court's order to show cause, see 28 U.S.C. § 1450, last sentence, but for which no one appeared) to restrain the new public sale is moot because the United States has agreed to postpone the sale pending the outcome of these two suits. This informal arrangement, not of record, has the potential for further needless controversy and the prudent course is to file notice of lis pendens, giving the Superior Court and both federal court docket numbers, under NJSA 2A:15–6, et seq., as amended in 1960. On the filing here of a certified copy of such a notice of lis pendens, an order denying the preliminary injunction without prejudice to renewal should be submitted.

The court is also of the view that the two suits pending here should be consolidated for all purposes, and an order to that end will be entered.

For the reasons stated above, the motions of the United States will be denied without prejudice to renewal after discovery and pretrial. The parties should be prepared to submit at the time of pretrial a complete

chain of title running at least from the date of the filing of the subdivision map of Victory Gardens, within which Lot 21 lies.

APPENDIX A

New Jersey's system of official records for public notice of deeds, mortgages and other instruments affecting interests in real property is county oriented. See *Trend Mills v. Socher,* 4 B.R. 465 (D.N.J.1980). The county officer who records most instruments affecting realty is called a "county recording officer", and his office is an "office of the county recording officer". These terms refer to the "register of deeds and mortgages" and his office for those counties having such an officer. In other counties they refer to the "county clerk" and his office. See, N.J.S.A. 46:1–1.

The statute books do not reflect the identity of the counties having a "register of deeds and mortgages". The first such office was established, for the County of Essex only, by N.J.P.L. 1859, p. 174; 3 N.J. Comp.Stat. (1910) p. 4291.

In 1904, an act was passed to create such an officer in every county having a population of more than 100,000, see N.J.Comp. Stat. 1910, p. 4292. Reference to the 1900 census figures shows that counties so qualifying (in addition to Essex) were Camden, Hudson and Passaic.

By amendments in 1905, 1906, 1910, and 1911 and 1919, the population required to create a register of deeds and mortgages was increased to 185,000, see 1911–24 N.J. Cum.Supp. § 171–10, and under the 1911 act, such offices (previously created) in counties having a population of less than 140,000 were abolished, see 1911–24 N.J. Cum.Supp. § 171–24.

In 1925, by supplement to the 1904 statute, an act was passed interposing a public referendum in any county which otherwise would have been required to elect a register of deeds and mortgages by reason of the population it attained. See 1925–1930 N.J. Cum.Supp. § 171–18.

---

8. Of course, nothing the court is aware of prevents the United States from filing a counterclaim for declaratory judgment to establish the nature and extent of the interest conveyed by the 1961 deed.

In the Revision of 1937, two pertinent provisions were included. NJRS 40:39–1 continued in existence those offices of register of deeds and mortgages theretofore established (without enumerating them). NJRS 40:39–2 called for creation of such an office in every county then or thereafter attaining a population of 250,000 subject to prior approval thereof on public referendum in the county. In the revision of Title 40 of 1971, these provisions were essentially continued, see NJSA 40A:9–80 and 81.

To ascertain the counties having such officers, then, the statutes alone provide no answer since the census data and referendum results for qualified counties would need to be consulted. The New Jersey Legislative Index, published annually, lists all major county officials by name and title, and is one unofficial reference source for this information. A similar unofficial source, more widely available, is the New Jersey Lawyers Diary and Manual. The 1980 Edition, at pages 983–984, discloses that registers of deeds and mortgages exist in only Camden, Essex, Hudson, Passaic and Union counties. In the other 16 counties, the "county recording officer" is the county clerk.

Lists of instruments entitled to be recorded, under this system, are found in NJSA 46:16–1, et seq. These include deeds of or affecting the title to real estate (NJSA 46:16–1) and federal tax liens which are made a lien under Title 26 U.S. Code (NJSA 46:16–13). The latter are required to be recorded in books entitled "federal liens", and to be immediately indexed in books entitled "index to federal tax liens."

Under NJSA 46:21–1, instruments "duly recorded or lodged for record" with the county recording officer, shall from that time be notice to all subsequent judgment creditors, purchasers and mortgagees.

## APPENDIX B

The action to quiet title, or suit "quia timet" is, in New Jersey, a suit of statutory origin first adopted by N.J.P.L. 1870, p. 20, and later appearing as N.J.Rev. 1877, p. 1189, 4. N.J.Comp.Stat. (1910) p. 5399, and as N.J.Rev.Stat. (1937) 2:76. It is now found as NJSA 2A:62–1 et seq.

It has been said that to refer to the statute as merely one "to quiet title" is misleading, *Brown v. Berry*, 89 N.J.Eq. 230, 108 A. 51 (E & A, 1918).

The statutory action is an extension of the earlier type "to remove a cloud from title" to land, over which the Court of Chancery had inherent jurisdiction.

New Jersey had separate courts of law and equity throughout its history until September 15, 1948 when the new Superior Court came into being as a single court, structured with separate trial divisions for actions at law and actions in equity, and with an appellate division to hear and decide appeals from the trial divisions (and from inferior courts), and also as a trial division for direct prerogative writ review and declaratory judgment relief involving State agencies.

A substantial body of equity law was accordingly accumulated, and the continuance of a Chancery Division for the trial of equity cases was designed to preserve those values, see N.J. Court Rule R.4:3–1(a)(1), and comment thereto in the Pressler Edition (Gann Law Books, 1980).

The enactment of the statute did not abolish the preexisting action, and the Court of Chancery had continued authority to entertain an action to remove a cloud from title to land, independent of the statute. See *Shepherd v. Nixon*, 43 N.J.Eq. 627, 13 A. 617 (E & A, 1887); *Bishop v. Waldron*, 56 N.J.Eq. 484, 40 A. 447 (Ch. 1898), aff'd. 58 N.J.Eq. 583, 43 A. 1098, (E & A, 1899); *Fittichauer v. Met. Fireproofing Co.*, 70 N.J.Eq. 429, 61 A. 746 (Ch.1905); *Steelman v. Blackman*, 72 N.J.Eq. 330, 65 A. 715 (Ch.1906); *Nugent v. Lindsley*, 92 N.J.Eq. 128, 111 A. 324 (Ch.1921); *Cahill v. Harrison*, 87 N.J.Eq. 524, 100 A. 625 (Ch. 1917); *De Luca v. Ventura*, 105 N.J.Eq. 288, 147 A. 580 (Ch.1929); *Dodge v. Jordan*, 91 N.J.Eq. 42, 108 A. 861 (Ch.1919).

In both the inherent chancery suit and in the statutory suit, the party initiating it had to be in possession of the land, see

*Haythorn v. Margerem*, 7 N.J.Eq. 324 (Ch. 1848); *Nugent v. Lindsley*, supra.

But, in the inherent chancery action, a prior determination of the plaintiff's title in an action at law was a condition precedent to filing the chancery action, *Thompson v. Engle*, 4 N.J.Eq. 271 (Ch.1843); *McGee v. Smith*, 16 N.J.Eq. 462 (Ch.1863).

The statute enlarged the jurisdiction of the Court of Chancery so that it could provide relief in advance of a determination of the title at law, *American Dock etc. v. Trustees*, 37 N.J.Eq. 266 (E & A 1883).

The action may be likened, in purpose, to that of interpleader because it is designed to *compel* all claimants to appear and have their rights in the land adjudicated, thus settling forever all disputes and doubts concerning the title. *Southmayd v. Elizabeth*, 29 N.J.Eq. 203 (Ch.1878); *Fittichauer*, supra.

Other purposes were to assist a possessor who could not bring ejectment at law, *Jersey City v. Lembeck*, 31 N.J.Eq. 255 (E & A 1879), to avoid multiplicity of suits and vexatious litigation with more than one disputant, *American Dock*, supra., *Shepard v. Nixon*, supra, and like purposes which induced Chancellor Runyon to describe it as "remedial and highly beneficial" and warranting a liberal construction, *Holmes v. Chester*, 26 N.J.Eq. 79 (Ch.1875).

Since the land must be located in New Jersey, and since named defendants are noticed to appear and state their interests so that there might be a complete settlement of every claim, the action is quasi in rem, *Realty Co. v. Burghardt*, 91 N.J.Eq. 120, 111 A. 275 (E & A 1919).

With acceptance of the notion of declaratory judgments as an authorized form of judicial remedy, NJSA 2A:16–50, et seq., and the authorization of the trial divisions of the Superior Court to grant both legal and equitable relief so that all matters in controversy may be completely determined in a single action, *N.J.Const*, 1947, Art. 6, § 3, par. 4, much the same, and sometimes more efficient methods are now available. For one example, see *Page v. Johnson*, 45 N.J.Super. 97, 131 A.2d 522 (Ch.1957).

The present statute is divided into several segments. The general sections, NJSA 2A:62–1 to 10 are very broad. Actions involving unknown claimants are dealt with by NJSA 2A:62–11 to 16. Actions involving remainder interests are covered by NJSA 2A:62–17 to 19. Actions involving the existence and validity of covenants, conditions, agreements or restrictions in deeds to real estate are allowed by NJSA 2A:62–20 to 22, and title to riparian lands and lands under water by NJSA 2A:62–23 to 26.

The continued existence of the inherent suit to remove a cloud from title remains important for if a state of facts should arise that happens not to come within the statute, suit may nonetheless be filed under the ancient jurisdiction.

In the present case, the statutory suit would normally be available except that the United States cannot be joined without its consent. That consent is given for most such cases by 28 U.S.C. § 2410, with concurrent jurisdiction in federal and state courts, but the United States argues that the consent there given is limited to cases where the interest is that under a mortgage or other lien, and does not extend to a case where the United States claims ownership, as by deed or eminent domain.

For those cases, it is argued, the consent given is that of 28 U.S.C. § 2409a, with exclusive jurisdiction in the federal courts and subject to a 12 year statute of limitations based on knowledge of the claim of ownership.

The paradox of the consent statutes is that where consent arises from § 2410, suit against all claimants, including the United States, can be brought in a State court, and if removed there would be jurisdiction here to resolve all the claims.

But if the consent arises only from § 2409a, the suit must be filed in federal court as to the United States, and there may well be no jurisdiction at all for other claimants, thus compelling separate actions in separate courts. The better course would have been to specify concurrent jur-

isdiction in § 2409a and allow the United States to remove if it chose. But that solution is for the Congress.